**STATE of Missouri, Respondent,**

v.

**Vernon BROWN, Appellant.**

No. 71264.

Supreme Court of Missouri,
En Banc.

June 20, 1995.

As Modified on Denial of Rehearing
July 25, 1995.

Janet M. Thompson, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERTSON, Judge.

A jury convicted Vernon Brown of first degree murder in violation of Section 565.020, RSMo 1994, and recommended that he be put to death. The trial court agreed and entered a sentence of death. Subsequently, the motion court overruled Brown's Rule 29.15 motion. This appeal followed. We have jurisdiction. Mo. Const. art. V, § 3. The conviction, sentence and denial of post-conviction relief are affirmed.

## I.

We interpret the facts in the light most favorable to the verdict. *State v. Shurn,* 866 S.W.2d 447, 455 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994).

On October 24, 1986, nine-year-old Janet Perkins left the Cole School in north St. Louis around 3:00 p.m. and walked toward her home three and a half blocks away. She generally took the same route each day, west on Enright Avenue. Under normal circumstances, the trip took less than 15 minutes.

Vernon Brown, who was then using the name Thomas Turner, had picked up his stepsons from Cole School and returned to their home on Enright Avenue in time to see Janet walking past. Brown called to her and ultimately enticed her to enter the house.

Brown's stepsons saw Janet enter the house. A neighbor's relative saw Brown on the front porch and Janet walking up the steps to the house. Brown ordered the stepsons to their bedroom and locked the door from the outside. Despite Brown's claims

that at this point he began suffering PCP-induced blackouts, Brown's own statements, the testimony of his stepsons, and the physical evidence show that he took Janet to the basement of the house, and bound her feet and one hand with a wire coat hanger, forcing her into a crouched position that permitted her head to reach the height of Brown's genitalia. Brown then strangled Janet to death with a rope.

The next day, enforcement authorities found Janet's body in two trash bags near a dumpster in an alley behind Brown's house.

Further investigation raised suspicion about Brown. When suspicion turned to probable cause, the police arrested Brown on October 27, 1986, confronted him with their evidence, including testimony of a neighbor who had seen Janet enter Brown's house, and asked Brown to tell them where to find Janet's missing shoe, raincoat and school papers. Brown led police to a different dumpster, in which they found a bag containing Janet's missing property.

Brown made a videotaped statement implicating himself as Janet's killer. In a subsequent statement, Brown also admitted killing Synetta Ford, a woman who had been murdered on March 7, 1985.

On November 18, 1986, a St. Louis City grand jury indicted Brown on two counts of first degree murder for the deaths of Janet Perkins and Synetta Ford. Brown's counsel moved to suppress the two videotaped statements and to sever the trials on the two murders. The trial court sustained the motion to sever but overruled the motion to suppress.

The jury convicted Brown of Janet Perkins' murder and, in the penalty phase, found four statutory aggravating circumstances and four nonstatutory aggravating circumstances. The jury recommended that Brown be put to death. The trial court concurred, entering its judgment of conviction and sentence of death on December 2, 1988. Subsequently, Brown filed a timely Rule 29.15 motion. After an evidentiary hearing, the motion court overruled the Rule 29.15 motion. This appeal followed.

## II.

A few preliminary matters require our attention. First, we choose to depart from Brown's presentation of the issues to proceed chronologically.

■ Second, Brown operates under several fundamental misconceptions about the proper subjects of a motion for post-conviction relief. He repeatedly assigns error to the motion court's refusal to order relief for acts or omissions which, if erroneous, would constitute simple trial errors subject to review on direct appeal. We will not address claims of motion court error founded on alleged trial court errors which appellant should have preserved for direct appeal.

■ Finally, unless a claim of plain error facially establishes substantial grounds for believing that "manifest injustice or miscarriage of justice has resulted," this Court will decline to exercise its discretion to review for plain error under Rule 30.20. We will, however, consider related claims of ineffective assistance of counsel for failure to preserve the alleged trial error under the test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

## III.

### A.

Brown claims that the trial court erred in overruling his motion to strike venireperson Alice Elking for cause. Ms. Elking ultimately served on the jury.

Upon examination by the prosecutor, Ms. Elking confessed that she thought the death penalty appropriate under some circumstances. The prosecutor then asked her to describe the circumstances to which she referred. She replied, "Cold-blooded, just for no reason, such as not in self-defense or somebody set out to do that. I don't know."

Brown's attorney asked her to clarify the meaning of "no reason" for the murder. He said, "... it seems to me that if I didn't prove to you otherwise and what you just said, that you would be basically in favor of giving the death penalty; am I wrong?" She replied, "If you cannot prove that he didn't cold-bloodedly murder that child? ... Prob-

ably, yes." Brown's counsel moved to strike Ms. Elking, because he understood her to mean she would expect him to bear the burden of proving that the killing was not "a killing for no reason." The trial court overruled the motion to strike for cause.

Later in voir dire, addressing the issue of the burden of proof, Brown's counsel asked Ms. Elking if she could follow the instruction that the defendant need not present any evidence of his innocence. She said that she could. He also asked if she would take Brown's failure to testify as evidence of his guilt. She said she would not.

■■■ "[T]he qualifications of a prospective juror are not determined conclusively by a single response but are made on the basis of the entire examination." *State v. Smith,* 649 S.W.2d 417, 425 (Mo. banc), *cert. denied,* 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983). "The question is not whether a prospective juror holds opinions . . . , but whether these opinions will yield and the juror will determine the issues under the law." *State v. Feltrop,* 803 S.W.2d 1, 8 (Mo. banc), *cert. denied,* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). The trial judge is in the best position to evaluate the venireperson's commitment to follow the law contained in the instructions. *State v. Leisure,* 749 S.W.2d 366, 375 (Mo. banc 1988), *cert. denied,* —— U.S. ——, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). We review the trial court's ruling for abuse of discretion and ask "whether there is a real probability of injury to the [defendant]." *Feltrop,* 803 S.W.2d at 7.

■■■ Ms. Elking spoke the words upon which Brown relies in response to counsel's question—a question that assumed a legal burden Brown did not bear. Ms. Elking, a layperson not yet instructed generally in the law or specifically in the burden of proof, could well have thought that counsel's question accurately described the law. As such her answer merely reflected her uninstructed notions on the propriety of the death penalty generally. When the questioning turned to the burden of proof and her duty to follow the law, Ms. Elking made clear her willingness to follow the law once made aware of it. "Venireperson [Elking] ultimately adhered to the presumption of innocence; thus the trial judge was not required to strike her for cause." *State v. Mahurin,* 799 S.W.2d 840, 845 (Mo. banc 1990), *cert. denied,* 502 U.S. 825, 112 S.Ct. 90, 116 L.Ed.2d 62 (1991). The trial court did not abuse its discretion in declining to strike juror Elking for cause.

### B.

Brown next assigns error to several voir dire excerpts as instances in which the trial court erred in sustaining the state's objection to the questions of Brown's counsel.

■■■ In questioning venireperson McClain, Brown's counsel (Ramsey) inquired into McClain's views on the effect of drug use on guilt:

McClain: Maybe he wasn't in control of himself. And that brings in a whole different picture, doesn't it?

Ramsey: Well, that's what I want to ask you about because, well, basically, you know, there are some elements to First Degree Murder that you're going to have to decide because the State's charging First Degree Murder. You're going to first of all be instructed that the State has the burden of proving this beyond a reasonable doubt. And by burden of proof it's going to mean that they have to come forward with the proof to prove every element of what First Degree Murder is, and by every element there's different parts of Murder First Degree.

First, you'd have to decide whether it was Janet Perkins that was killed and she was actually killed, okay? Second of all, you'd have to find and believe beyond a reasonable doubt that Vernon Brown caused the death; and then third—

Prosecutor: I object to counsel instructing as to the law.

The Court: Sustained.

Ramsey: Would you have any problem considering if you were instructed that the defendant had to act with premeditation and deliberation for Murder First Degree?

Prosecutor: Same objection. He's instructing as to the law.

The Court: Sustained, improper during voir dire.

Ramsey: Well, she [the prosecutor] was allowed to go into matters of law in her voir dire and as to what circumstances would justify this and I think I'm entitled to go into whether or not they believe there was a premeditation and deliberation, whether they would consider that in conjunction with the Murder First Degree conviction. I don't see anything improper about that at all.

The Court: You're not permitted to go into the proposed charge to the jury during voir dire. You may ask to consider all the elements of the offense, which they must consider beyond a reasonable doubt, but you cannot give them the charge or the proposed charge of the Court at this time.

"Counsel may not tell prospective jurors what law will be applied in the case or what instructions will be given to them." *State v. White*, 722 S.W.2d 92, 94 (Mo.App.1986); *accord State v. Beatty*, 617 S.W.2d 87, 92 (Mo. App.1981). In *State v. Dixon*, 717 S.W.2d 847, 848 (Mo. banc 1986), this Court held that although a defendant may inquire whether the jury can follow the court's instructions, counsel could not read a manslaughter instruction to the jury.

At its essence, Brown's point claims that the trial court's "inconsistent rulings favored the state." Yet, Brown's counsel did not object to the state's voir dire. There is simply no basis for a claim of inconsistent rulings in the absence of an objection to the state's voir dire. When apprised of Brown's counsel's voir dire transgressions by the state, the trial court entered the correct ruling.

The point is denied.

The remaining claims of voir dire error were not preserved. On their face, the points raised do not rise to the level necessary to warrant plain error review. They are, therefore, procedurally waived.

## IV.

Brown claims prejudicial error during the guilt phase of his trial resulting from the admission of certain evidence, the making of certain statements by both witnesses and the prosecutor, the submission of certain jury instructions, and the failure to submit others.

### A.

Brown initially contends that the trial court erred in finding his stepsons competent to testify against him, and in permitting the prosecutor to use leading questions in examining the boys. At the time of the trial, the stepsons, Tommy Johnson, Christopher Moore and Jason Moore, were ages eleven, nine, and seven, respectively.

■ Section 491.060(2) creates a rebuttable presumption that persons under the age of ten are incompetent to testify. The presumption is rebutted by showing:

(1) a present understanding of, or the ability to understand upon instruction, the obligation to speak the truth; (2) the capacity to observe the occurrence about which testimony is being sought; (3) the capacity to remember the occurrence about which testimony is sought; and (4) the capacity to translate the occurrence into words. *State v. Ray*, 779 S.W.2d 3, 5 (Mo.App.1989). Determination of competency is left to the discretion of the trial court, and its decision will not be reversed absent a clear abuse of discretion. *State v. Johnson*, 694 S.W.2d 490, 491 (Mo.App.1985).

*State v. Feltrop*, 803 S.W.2d 1, 10 (Mo. banc 1991). The law also presumes a person ten years of age or older competent to testify, unless the evidence shows the witness has mental infirmities or has less than ordinary intelligence for his age. § 491.060(2), RSMo 1994. *State v. Johnson*, 714 S.W.2d 752, 758–759 (Mo.App.1986); *State v. Potter*, 747 S.W.2d 300, 305–306 (Mo.App.1988).

■ Nothing in the record indicates that eleven-year-old Tommy Johnson suffered from diminished mental capacity. Given the trial court's broad discretion and superior ability to judge demeanor, we will not reverse absent a clear showing that the trial court abused its discretion. *Feltrop*, 803 S.W.2d at 10. Brown fails to make such a showing. We find no error in the trial court's decision to permit Tommy Johnson to testify.

Christopher and Jason Moore had not yet reached the age of ten by the time of the competency hearing. Brown selectively quotes from the record in an attempt to show that Christopher and Jason lacked the requisite mental and oral skills to rebut the Section 491.060(2) presumption.

■ While it is true that the two younger boys experienced difficulty recalling time frames, they understood their obligation to speak the truth and were able to recall the day of Janet's death, their memories of what happened and express those memories in a coherent manner. Given the trial court's broad discretion and superior ability to judge demeanor, we will not reverse absent a clear showing that the trial court abused its discretion. *Feltrop*, 803 S.W.2d at 10. The trial court did not abuse its discretion in permitting the boys to testify.

### B.

The trial court permitted the prosecution to ask leading questions of Tommy Johnson during the competency hearing. Brown claims this constitutes error.

■ At the competency hearing, Brown called Tommy Johnson to testify, and the prosecutor cross-examined him. A party may ask leading questions of its own witness on cross-examination when the other party calls that witness. *See, e.g., King v. Copp Trucking, Inc.*, 853 S.W.2d 304, 310 (Mo.App. 1993).

The point is denied.

### C.

■ Brown asserts that the trial court committed reversible error in overruling his objection to the testimony of Donna Denny, a worker at a local blood plasma center at which Brown sold blood. Denny knew Brown by his alias, Thomas Turner. Denny testified that she remembered Brown because she had seen him become violent. Brown claims Denny's testimony amounted to the prohibited admission of evidence of past crimes or prior bad acts, citing *State v. Carter*, 475 S.W.2d 85, 88 (Mo.1972), for the proposition that the erroneous admission of evidence of unconnected crimes presumptively creates prejudice.

*Carter* is inapposite. No witness testified to an unconnected crime or act. Denny did not testify to any assaultive behavior. The state elicited Denny's testimony to explain the reason Denny remembered Brown's visit to the plasma center. Use of an alias "cannot be characterized as clear evidence associating appellant with other crimes." *State v. Hornbuckle*, 769 S.W.2d 89, 96 (Mo. banc), *cert. denied*, 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989).

The point is denied.

### D.

Brown urges that the trial court erred in submitting guilt phase Instructions Nos. 4 and 8, and in refusing to submit Proposed Instruction No. 7a in place of Instruction No. 8.

Brown asserts that Instruction No. 4 violates due process by diluting the definition of "beyond a reasonable doubt" by using the phrase "firmly convinced" in the instruction. This Court has repeatedly rejected this claim, recently in *State v. Chambers*, 891 S.W.2d 93, 105 (Mo. banc 1994).

The point is denied.

■ Brown objected to the submission of Instruction No. 8 at trial and offered Proposed Instruction No. 7a as an alternative. MAI–CR3d 310.50 provided the model for Instruction No. 8. In *State v. Erwin*, 848 S.W.2d 476, 483 (Mo. banc), *cert. denied*, —— U.S. ——, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993), this Court held that MAI–CR3d 310.50 violated due process in that it relieved the state of its burden to prove the required mental state of the crime charged. *Erwin* held that submission of MAI–CR3d 310.50 would constitute reversible error in all subsequent trials and in all trials subject to direct appeal at the time of the *Erwin* decision. *Id.* at 484. This case falls within the *Erwin* exception, however, only if Brown preserved the specific claim that MAI–CR3d 310.50 violates due process by relieving the state of its burden to prove intent. *Id.*

Here, Brown objected to Instruction No. 8 without mentioning due process, calling it "inappropriate" to the facts of the case and an *ex post facto* law. His motion for new trial repeated those legal bases for his objection to the instruction. Therefore, Brown failed to preserve his constitutional claim under the *Erwin* exception.

Brown argues that by offering Proposed Instruction No. 7a he put the trial court "on notice" of the constitutional infirmity of Instruction No. 8. Instruction No. 8 read: "In determining the appellant's guilt or innocence, you are instructed that an intoxicated or drugged condition ... will not relieve a person of responsibility for his conduct." Brown urged the court instead to employ Instruction No. 7a to instruct the jury that "evidence that the appellant was in an intoxicated or drugged condition may be considered by you in determining whether appellant acted knowingly...."

*Erwin* says: "Neither shall a defendant be entitled to an instruction that the jury may consider evidence of voluntary intoxication in determining if the defendant had the requisite mental state." *Id.* at 482. *Erwin* expressly rejected the language contained in proposed Instruction No. 7a. The trial court properly refused to submit Instruction No. 7a because it misstated the law.

Moreover, because it differed from Instruction No. 8 only by changing the significance of a drugged condition, proposed Instruction No. 7a did not preserve an *Erwin* due process claim as to MAI–CR3d 310.50.

The point is denied.

### E.

■ Brown moved for acquittal at the end of the guilt phase of his trial claiming that the state introduced no evidence of "deliberation," an element of first degree murder. § 565.020. He assigns error to the trial court's failure to enter a judgment of acquittal at that time.

In reviewing a challenge to the sufficiency of the evidence appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the appellant guilty beyond a reasonable doubt. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). The jury may infer deliberation from circumstances that indicate "cool reflection for any length of time no matter how brief." § 565.002(3); *State v. Feltrop,* 803 S.W.2d 1, 11 (Mo. banc), *cert. denied,* 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991).

■ The jury had the following evidence before it on which to base such an inference: Brown lured Janet into his dwelling; he sent his stepsons to their room and locked the door behind them; he took Janet to the basement of his dwelling; he bound her with a wire coat hanger and strangled her with a rope. The jury was not required to believe Brown's incredible claim that he experienced PCP blackouts during crucial moments of the murder. The evidence nevertheless supported a finding of cool reflection in preparation for Janet's death.

The point is denied.

### F.

Brown urges that the trial court erred in admitting Brown's confession to the murder of Janet Perkins in the guilt phase of his trial. Before the trial began, Brown moved to suppress the statements in which he implicated himself in the Perkins murder. The trial court overruled the motion, which incorporated both Fifth and Sixth Amendment grounds.

The record clearly indicates that Brown received his warnings under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and waived his Fifth Amendment right to counsel immediately before he gave each statement and prior to the commencement of an adversary judicial proceeding. His Sixth Amendment right to counsel did not attach until the state filed charges. *Davis v. U.S.,* — U.S. —, —, 114 S.Ct. 2350, 2354, 129 L.Ed.2d 362 (1994); *State v. Parker,* 886 S.W.2d 908, 918 (Mo. banc 1994), *cert. denied,* — U.S. —, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995). The state had filed no charges by the time Brown made the Janet Perkins statement.

The point is denied.

## V.

We now consider assignments of error relating to the penalty phase.

### A.

Brown assigns error to the trial court allowing the state to endorse his stepsons as witnesses against him in the penalty phase and in overruling his motions for a continuance and for sanctions for late disclosure of evidence by the state.

### 1.

The trial began October 17, 1988, nearly two years after Janet's murder. The state endorsed Brown's stepsons as witnesses in the penalty phase on May 26, 1987. Two weeks prior to trial, the state furnished Brown a copy of a police report showing allegations that Brown had sodomized his stepsons. On October 10, 1987, the state informed Brown that it intended to use the sodomies as evidence of an aggravating circumstance at the penalty phase of the trial. On October 14, 1987, Brown filed a motion for a continuance, claiming that he suffered a medical condition that would make it difficult for him to sit through trial and that he had only recently been provided the police report outlining Brown's sodomies against his stepsons. The trial court denied the continuance.

On October 14, 1988, the state provided Brown with statements of various witnesses from Indianapolis, Indiana, surrounding Brown's guilty plea to charges of assault and battery with intent to gratify sexual desire in Indiana in 1973. The victim of the Indiana felony was a 12–year–old female. Brown received a sentence of up to five years as a result of that conviction.

On October 18, 1988, the day after voir dire in the trial commenced, Brown filed a motion for sanctions to prevent the state from using the Indiana evidence or, in the alternative, for a continuance. The trial court overruled both motions.

### 2.

The state offered the evidence that Brown sodomized his stepsons in support of nonstatutory aggravating circumstances. Brown now claims that the trial court erred in admitting the sodomy evidence, and in denying a continuance, on the ground that the state's failure to disclose its intent to prove the sodomy as a nonstatutory aggravating circumstance deprived his counsel of time to prepare for that evidence.

The grant or denial of a motion for continuance lies in the sound discretion of the trial court. *State v. Nave,* 694 S.W.2d 729, 735 (Mo. banc 1985), *cert. denied,* 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 901 (1986).

Difficulties counsel might encounter in preparing to deal with evidence do not require the judge to grant a continuance or exclude otherwise admissible evidence. Moreover, in his continuance motion, Brown indicated that the state informed him of its intent to offer evidence of the sodomies no later than October 10, a week before trial and three weeks before the start of the penalty phase. The trial court reasonably concluded that the time between disclosure and the start of the penalty phase was sufficient time to prepare to meet the evidence. *See State v. Stokes,* 638 S.W.2d 715, 720 (Mo. banc 1982), *cert. denied,* 460 U.S. 1017, 103 S.Ct. 1263, 75 L.Ed.2d 488 (1983).

Assuming for the sake of argument only that the trial court erred in overruling the motion for continuance despite the three-week interval between disclosure and the use of the evidence in the penalty phase, there was no prejudice. The jury found four statutory aggravating circumstances, only one of which was necessary to support the death penalty. *State v. McMillin,* 783 S.W.2d 82, 104 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). Even removing all of the sodomy evidence, there remained an overwhelmingly sufficient legal and factual predicate for the imposition of the death penalty.

### 3.

We also reject Brown's claim that he received notice of the Indiana evidence from the state too late to permit adequate preparation for its use in the penalty phase. First, Brown's counsel had all the evidence pertinent to the Indiana conviction well before the

penalty phase of the trial began. Second, the only Indiana evidence introduced by the state at the penalty phase was written evidence of Brown's Indiana conviction used for the purpose of proving the statutory aggravating circumstance that Brown was a person "who has one or more serious assaultive criminal convictions." § 565.032.2(1), RSMo 1994. The Indiana records speak for themselves and require no investigation or additional preparation to understand. Third, neither the motion for the continuance filed as a result of the disclosure of the Indiana record evidence nor Brown's brief on appeal offer any more than a bare allegation of prejudice as a result of the state's "late" disclosure. Neither document speaks of any specific information further investigation or preparation would have uncovered that would have benefitted Brown in his defense against the record evidence from Indiana.

The trial court did not err to Brown's prejudice in overruling Brown's motions for continuance and sanctions against the state regarding either the sodomy or the Indiana conviction evidence.

The point is denied.

## B.

Dr. James Monteleone testified for the state during the penalty phase concerning the sodomy of Brown's stepsons in 1987. Monteleone's testimony showed that physical evidence corroborated the claims of Tommy Johnson and Jason Moore that Brown had sexually abused them. On cross-examination, Brown's counsel attempted to ask about a 1984 physical examination of the boys conducted at the request of their mother. The state objected on the ground of relevance. The trial court sustained the objection. Brown now claims trial court error in the decision to sustain the objection.

A 1987 police report provided Brown by the state indicated that the boys were examined at Cardinal Glennon Hospital in 1984 following a previous report of abuse. Brown offered no evidence in an offer of proof either that Dr. Monteleone participated in any examination of any of the children in 1984 or was aware of the 1984 examination.

It appears from the record and from Brown's brief that Brown's counsel's inquiry was an attempt to bring out a statement in the 1987 police report that the boys' mother paid no attention to Christopher's complaint that Vernon "was messing with him" because she believed *"the children* played, lied." [Emphasis added.] Dr. Monteleone's testimony of physical trauma to Tommy Johnson and Jason Moore's anuses rebutted the mother's statement as to the question of whether the sexual abuse actually occurred. The trial court did not err in sustaining the state's objection.

The point is denied.

## C.

Brown assigns error to the trial court's penalty phase admission of (1) testimony by Dr. Monteleone that the absence of positive findings of sexual abuse of Christopher Moore did not rule out sexual abuse against him and (2) record evidence of Brown's Indiana assault conviction that included statements concerning an Indiana rape charge for which Brown was not convicted.

### 1.

As to the first claim, there is nothing unfairly prejudicial about testimony by an expert as to facts within his expertise. Brown had the opportunity to cross-examine the expert and did so. That the expert did not testify to Brown's liking is not trial court error. Brown complains essentially that the court permitted testimony damaging to his case. Moreover, Brown mischaracterizes Dr. Monteleone's testimony in his brief. The record clearly shows that he testified to positive findings of sexual abuse in Tommy Johnson and Jason Moore.

### 2.

As to the Indiana charges, Brown claims that because the document showed that Indiana had charged him with two crimes, rape and assault, but only convicted him of the assault, the jury might think he committed two crimes. Brown's argument rests on his conclusion that the document is misleading.

The Indiana document is not misleading. It shows that Brown was convicted of assault and charged with rape and that the Indiana prosecutor chose not to prosecute the rape charge. The jury was fully informed as to the prosecutor's decision not to prosecute. The trial court did not err in overruling Brown's objections.

### D.

██ Brown objected to the prosecutor's comments in her opening statement of the penalty phase that Brown married a woman in Indiana, did not get divorced, and married the mother of his stepsons in St. Louis. This statement strictly tracked evidence admitted in the guilt phase of the trial, to which Brown did not object and which Brown himself revealed in statements to the police. He complains that because he never faced a charge of bigamy, the argument misled the jury into believing he had committed another crime. The prosecutor did not, however, either mention or imply a charge or conviction of bigamy; she summarized a state of affairs exactly supported by the evidence. Moreover, the evidence goes to Brown's character, a subject highly relevant to penalty phase deliberations. *State v. Chambers*, 891 S.W.2d 93, 107 (Mo. banc 1994).

The point is denied.

### E.

Brown asserts that Missouri's death penalty scheme violates due process and the Eighth Amendment because (1) this Court refuses to engage in meaningful proportionality review, (2) prosecutors have unbridled discretion to seek the death penalty and (3) the death penalty serves no legitimate state interest. This Court has considered and rejected these very arguments in prior cases, most recently in *Chambers*, 891 S.W.2d at 113.

The point is denied.

### F.

Brown urges that the trial court erred in admitting Brown's confession to the murder of Synetta Ford and related evidence in the penalty phase because (a) the court's prior severance order precluded mentioning the Ford murder in the Janet Perkins' trial, and (b) police illegally obtained Brown's statement about the Ford killing by interrogating him without the presence of Ronnie White of the Public Defender's Office, who represented him in the Janet Perkins' case.

### 1.

██ Contrary to Brown's assertion, the motion to sever and the court's order sustaining the motion to sever did not expressly prohibit the use of the Ford evidence in the penalty phase of the Perkins' trial. A severance of murder counts does not alter the principles guiding the admission of evidence in the penalty phase of a criminal trial. During the penalty phase the jury may consider not only the circumstances of the crime but the character of the defendant and the acts that reveal that character. The trial court has discretion to admit any evidence helpful to the jury in determining the proper punishment. *State v. Six*, 805 S.W.2d 159, 166 (Mo. banc), *cert. denied*, 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991). The trial court did not abuse its discretion in permitting the jury to hear evidence of the Ford murder during the penalty phase.

### 2.

Before the trial began, and indeed before the trial court severed this case from the Ford murder case, Brown moved to suppress the statements in which he implicated himself in the Perkins and Ford murders. We have previously discussed the Perkins confession—IV, F, *supra*. The trial court overruled the motion, which incorporated both Fifth and Sixth Amendment grounds, as to the Ford confession as well.

The day following Brown's confession to the Perkins' murder, attorney Ronnie White began representing Brown in the Perkins' case. That night, Brown made his Synetta Ford statement, having waived his Fifth Amendment rights. The state filed no official charges against Brown in the Synetta Ford case until months later.

██ The Sixth Amendment right to counsel is offense-specific: if it has not attached

for a given charge, the state may introduce evidence on that charge obtained in the absence of counsel while a defendant has representation on another charge. *State v. Parker,* 886 S.W.2d 908, 918 (Mo. banc 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995); *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). Therefore, the trial court did not err in admitting the Synetta Ford statement.

The point is denied.

### G.

Brown claims that the trial court erred in overruling his objections to Instructions Nos. 6 and 7. Those instructions set forth the statutory and nonstatutory aggravating circumstances, respectively, and read as follows:

### INSTRUCTION NO. 6

In determining the punishment to be assessed against Brown for the murder of Janet Perkins, you must first unanimously determine whether one or more of the following aggravating circumstances exists:

Whether Brown was convicted of Assault and Battery With the Intent To Gratify Sexual Desires on June 28, 1973 in the Criminal Court of Marion County of Indiana.

Whether the murder of Janet Perkins involved torture or depravity of mind and that as a result thereof it was outrageously or wantonly vile, horrible, or inhuman.

Whether the murder of Janet Perkins was committed for the purpose avoiding, interfering with, or preventing a lawful arrest or custody in a place of lawful confinement of Brown.

Whether Janet Perkins was a potential witness in the investigation of an assault of Janet Perkins and was killed as a result of her status as a potential witness.

Whether the murder of Janet Perkins was committed while the defendant was engaged in the perpetration of or the attempt to perpetrate rape, sodomy or kidnapping.

\* \* \* \* \* \*

... if you do not unanimously find from the evidence beyond a reasonable doubt that at least one of the foregoing circumstances exists, you must return a verdict fixing punishment of the defendant at imprisonment for life by the Division of Corrections without eligibility for probation or parole.

### INSTRUCTION NO. 7

If you have found beyond a reasonable doubt that one or more of the aggravating circumstances submitted in Instruction No. 6 exists, then, in determining the punishment to be assessed against the defendant for the murder of Janet Perkins, you may also consider:

Whether Brown was convicted of Assault and Battery With the Intent To Gratify Sexual Desires on June 28, 1973, in Marion County of Indiana.

Whether the defendant admitted to the killing of Synetta Ford.

Whether the defendant admitted to the killing of Janet Perkins.

Whether the defendant committed acts of sodomy on Tommy Johnson.

Whether the defendant committed acts of sodomy on Jason Moore.

Whether the defendant committed acts of sodomy on Christopher Moore.

You are further instructed that the burden rests upon the state to prove the circumstance beyond a reasonable doubt. On each circumstance that you find beyond a reasonable doubt, all twelve of you must agree as to the existence of the circumstance.

If you do not unanimously find and believe from the evidence beyond a reasonable doubt that a circumstance exists, then that circumstance shall not be considered by you in returning your verdict fixing the punishment of the defendant.

Brown claims that Instruction No. 7 is erroneous in that (1) the reference to the Indiana assault impermissibly "double counted" the same factor from Instruction No. 6, (2) the "admission" paragraphs turn mitigating circumstances into aggravating circumstances, (3) the Synetta Ford killing was an

unadjudicated crime not properly submitted as an aggravating circumstance, and (4) the sodomy was an uncharged crime not supported by the evidence and hence not proper as an aggravating circumstance.

### 1.

■■■ Statutory aggravating circumstances guide the jury's deliberations in an attempt to avoid arbitrary and capricious imposition of the death penalty. *State v. Shaw*, 636 S.W.2d 667, 675 (Mo. banc), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982). Once a jury finds one statutory aggravating circumstance, it may then, but only then, consider all other evidence relevant to the imposition of the death sentence, including nonstatutory aggravating circumstances. Nonstatutory aggravating circumstances therefore cannot prejudice a defendant by allowing consideration of a fact which the jury already found to be true as a statutory aggravating circumstance. Brown correctly asserts that Instruction No. 7 duplicates the reference to the Indiana assault. However, "[s]uch duplication was harmless error, if error at all." *State v. Zeitvogel*, 707 S.W.2d 365, 369 (Mo. banc), *cert. denied*, 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986).

### 2.

■■■ Brown next contends that using his statements admitting that he killed Janet Perkins and Synetta Ford as aggravating circumstances turned mitigating evidence into aggravating evidence. Brown's argument proceeds from the hope that admitting a crime following arrest always shows accepting responsibility for it—and that that is an indication of his improving, if not good character.

Had Brown marched to the police station voluntarily to confess the murders, we might agree. He did not. Instead, he remained silent on the Ford murder for over eighteen months. His confession, when made after his arrest in another murder, variously blamed Ford's death on drugs, on Ford attacking him first, and on Ford "accidentally" stabbing herself in the chest and throat in the course of a struggle, and argued that he strangled her in self-defense (apparently after she stabbed herself).

The confession to Janet Perkins' murder came only following Brown's arrest and all of the evidence pointed to Brown. Such confessions are not evidence in mitigation.

From his argument, it appears that Brown wishes the instruction had omitted reference to his confessions. We doubt he seriously wishes the instruction had said more simply that he had killed Ford and Perkins. If anything, the instruction as given softened their focus to Brown's benefit.

The point is denied.

### 3.

Brown claims that the trial court erred in submitting the Ford murder as a nonstatutory aggravating circumstance in that the state had not convicted Brown of the crime. Brown confessed to a role in Synetta Ford's death.

■■■ During the penalty phase, the jury may properly consider any act of the defendant that shows his character. The absence of a conviction where the defendant admits the crime does not change that rule. *State v. Six*, 805 S.W.2d 159, 167 (Mo. banc), *cert. denied*, 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991).

### 4.

■■■ As to the sufficiency of evidence for the submission of sodomy on Brown's stepsons as an aggravator, each boy testified that Brown committed acts which constitute sodomy, and medical examinations positively indicated sodomy on two of the boys. That evidence supports the submission of the instruction. The trial court did not err in submitting penalty phase Instruction No. 7.

### 5.

We consider now Brown's claims of error relating to Instruction No. 6 regarding statutory aggravating circumstances.

### a.

■■■ Brown first insists that the Indiana conviction for assault and battery with intent

to gratify sexual desires is not a "serious assaultive criminal conviction" within the meaning of Section 565.032.2(1) and the trial court erred in submitting it as a statutory aggravating circumstance. We disagree.

The Indiana indictment charged Brown with assault and battery by fondling a 12–year–old child in a "rude or insolent manner." Brown seizes on the words "rude or insolent" to argue that the Indiana assault was not also "seriously assaultive."

Brown pled guilty to a felony in Indiana. By definition a felony is a "crime of a ... more serious nature than those designated misdemeanors." Black's Law Dictionary 617 (7th ed. 1990). Obviously, an assault and battery to gratify sexual desires is an assault. To conclude, as Brown urges, that sexual assault of a child that results in a felony conviction is not seriously assaultive misunderstands the nature of the offense. Any felony assault and battery that constitutes a sexual invasion of a child is seriously assaultive within the meaning of Section 565.032.2(1).

b.

■ Brown next claims that the "torture or depravity of mind" instruction does not provide sufficient guidance to the jury, without a limiting definition of "depravity of mind". This Court has found such a limiting instruction necessary where the aggravating circumstance turns on depravity of mind. *See State v. Chambers*, 891 S.W.2d 93, 109 (Mo. banc 1994), (instruction did not include the word "torture," but included a limiting definition); *State v. Feltrop*, 803 S.W.2d 1, 14–17 (Mo. banc), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). However, where the evidence supports a jury finding of torture, a word that needs little definition, the absence of a limiting instruction for depravity of mind will not destroy the validity of the jury's finding. *LaRette v. Delo*, 44 F.3d 681, 686–87 (8th Cir.1995). Here, Brown bound a young girl with a coat hanger in a strange position, witnesses heard Janet screaming while Brown laughed, and Janet died at Brown's hand. The trial court properly submitted the instruction for torture without a limiting definition of depravity of mind.

c.

■ Insufficiency of evidence, according to Brown, rendered the remaining three statutory aggravating circumstances inappropriate for submission to the jury. Brown claims that no evidence supported the following submissions: (a) that Brown killed Janet to avoid arrest, (b) that an investigation existed in which Janet could be a witness, and (c) that Brown attempted to commit rape, sodomy, or kidnapping. Where a defendant challenges the sufficiency of evidence to support an aggravating circumstance, the test is whether a reasonable juror could reasonably find from the evidence that the proposition advanced is true beyond a reasonable doubt. *See State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989).

■ As to the first claim, it requires no stretch of the imagination to conclude that jurors could reasonably have inferred that Brown killed Janet because she could identify him, and thus cause his arrest. *Six*, 805 S.W.2d at 169; *State v. Grubbs*, 724 S.W.2d 494, 501 (Mo. banc), *cert. denied*, 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 707 (1987). By the same token, a reasonable juror could infer that Brown foresaw an investigation that had yet to happen and killed Janet to forestall that development. Finally, the jury did not find the third aggravating circumstance. The trial court committed no error in submitting Instruction No. 6.

*The point is denied.*

H.

Brown also assigns error to the trial court's submission of Instructions Nos. 3 and 11 in the penalty phase of the trial. We have previously addressed the merits of Brown's protest of Instruction No. 3 in our discussion of Instruction No. 4 from the guilt phase: both instructions include the definition of "beyond a reasonable doubt" borrowed from MAI–CR3d 302.04. For the reasons previously given, IV, D, *supra*, the trial court properly instructed the jury on that definition.

Brown's challenge to Instruction No. 11 posits that by explaining to the jury that the judge will decide the penalty if the jury cannot, the instruction downplayed the jury's responsibility. We have repeatedly rejected this claim. *Six,* 805 S.W.2d at 167; *see also California v. Ramos,* 463 U.S. 992, 1009–1014, 103 S.Ct. 3446, 3457–3460, 77 L.Ed.2d 1171 (1983).

## VI.

■ Brown filed a timely Rule 29.15 motion. We now consider Brown's claims of error by the motion court. Review is under the standard established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A convicted criminal is entitled to a new trial only if his counsel's performance and nonstrategic decisions fall below the standard of a reasonably competent attorney, and there exists a reasonable probability that but for counsel's professional errors, the outcome of the proceeding would have been different.

### A.

Brown's 111–page Rule 29.15 motion claims that the practice of the circuit court to provide prospective jurors with a "Handbook of Information for Trial Jurors" violated his rights under the Sixth, Eighth and Fourteenth Amendments. Before this Court he now argues that the handbook supplied instructions to the jury not consistent with MAI–CR. He did not claim in his Rule 29.15 motion that his counsel was ineffective in failing to object to this; that point is raised for the first time on appeal; we will not consider it.

Given its most generous reading, the conclusory wording of Brown's Rule 29.15 claim is one of trial court error. Such a claim is not cognizable under Rule 29.15.

The point is denied.

### B.

At his Rule 29.15 motion hearing, Brown sought to introduce testimony and reports by several experts which he asserts would prove, among other things, that juries do not understand death penalty instructions or the relative costs and benefits of the death penalty, and that the death penalty should be disallowed. The motion court found these claims non-cognizable under Rule 29.15. We agree.

■ Rule 29.15 does not provide a duplicative opportunity for review of claims properly addressed on direct appeal. *State v. Tolliver,* 839 S.W.2d 296, 298 (Mo. banc 1992). We addressed Brown's position on the constitutionality of Missouri's death penalty statutes on direct appeal. Similarly, Brown's allegations of jury misunderstanding raise no issues which he could not properly address in a direct claim of instructional error, and the motion court properly refused to consider them. *Six,* 805 S.W.2d at 173. Moreover, constitutional imposition of the death penalty does not require, or indeed allow, jury consideration of the costs and benefits of the death penalty. *State v. Powell,* 798 S.W.2d 709, 716 (Mo. banc 1990), *cert. denied,* 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991). The motion court did not err in refusing to address Brown's non-cognizable claims.

### C.

Brown's asserts that his counsel was ineffective for failure to move to strike Harrietta Olsen as a juror. Brown refers to selected statements from Ms. Olsen's voir dire responses to show she was an "automatic death penalty juror." His brief excerpted the following statements: " ... I really do believe if somebody takes somebody else's life, he ought to pay for it;" "if it was just cold murder, then it would have to be ... a death sentence;" and "I think if somebody, like I said, in cold-blooded murdered, then that's it. I mean, that's the death sentence."

A determination of the existence and depth of bias and prejudice can be made accurately only after a potential juror understands the legal requirements of her responsibility as a juror. We do not expect venire[persons] to come to court with a legally sufficient or unerringly correct understanding of the requirements the law imposes on jurors.

*State v. Leisure,* 749 S.W.2d 366, 375 (Mo. banc 1988), *cert. denied,* —— U.S. ——, 113

S.Ct. 343, 121 L.Ed.2d 259 (1992). The court must look at the entire voir dire to determine juror qualification, not selectively chosen portions. *State v. Feltrop*, 803 S.W.2d 1, 8 (Mo. banc), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). Within context, Ms. Olsen's statements follow:

Ramsey (Brown's counsel): Okay. Well, when you said that if somebody took somebody's life, they ought to have to pay for it, do you mean they should get the death penalty?

Olsen: They should either—again circumstances, either the death penalty or the—I mean, either one, life in prison, whatever the circumstances would be.

Ramsey: Well, can you tell me what kind of case or what kind of circumstances you think a person would deserve a life sentence without possibility of parole as opposed to the death sentence?

Olsen: Well, like I said, if it was just cold murder, then it would have to be the life sentence—I mean, a death sentence.

Ramsey: Like a planned?

Olsen: A planned thing or premeditated or whatever, then I believe that. But, if there's a chance, you know, for it to be, circumstantial evidence or something, that could keep them or let them go into, I guess you could say, life in prison or whatever the law is in regards to that.

So, that's what I think. I don't know. I may be wrong. But I think if somebody, like I said, in cold-blooded murdered, then that's it. I mean, that's the death sentence.

\* \* \* \* \* \*

Ramsey: You could follow any instructions that might be given to you about that?

Olsen: Yes.

■■■■ Courts do not disqualify a venireperson because she has unchannelled opinions about the death penalty. *Leisure*, 749 S.W.2d at 372. Instead, the critical inquiry is *whether her opinion is so strong that she* will not follow the instructions. Ms. Olsen's voir dire indicates no such opinions. Even if

Brown's counsel should have moved to strike Ms. Olsen, no prejudice attended the failure.

The point is denied.

## D.

■■■■ Brown finds his counsel ineffective in failing to object to the trial court's strike for cause of venirepersons Curtis Robinson and Alexander Hodges, who were serving probation following D.W.I. convictions. Brown claims that striking these two African-Americans deprived him of a *jury* composed of a fair cross section of the community and equal protection of the law. The motion court denied Brown's claim on the basis that Brown made no showing that the *venire* from which his jury came failed to represent a fair cross section of the community. *Holland v. Illinois*, 493 U.S. 474, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990), limits fair cross section claims to the venire. There is no Sixth Amendment right to a jury that represents a fair cross section of the community. Other than the bare conclusion he announces, Brown offers no evidence or legal reason to believe that the absence of these venirepersons from the jury prejudiced his defense.

The point is denied.

## E.

According to Brown, his

trial counsel was ineffective, "either through ignorance or negligence" during voir dire, because he failed to object to or correct the prosecutor's improper explanation of the penalty phase of the trial. Had he been effective, he would have appropriately explained the law as it related to the roles of aggravating and mitigating circumstances, and mercy in the jury's determination of the appropriate penalty to be imposed.

The motion court held: "This allegation is conclusory in that movant has not alleged which statements were incorrect and how he was prejudiced."

Bare conclusions, without more, are insufficient to invoke the motion court's jurisdiction.

The point is denied.

### F.

 Brown contends that his trial counsel failed to represent him effectively in that he did not object to the frequent mention by police witnesses that they "became interested" in Brown when they learned he was not Thomas Turner, but Vernon Brown. Brown characterizes this testimony as inadmissible "evidence of unrelated crimes." He is wrong.

To maintain two separate identities does not necessarily constitute a crime, and here no witness characterized it as a crime. Use of an alias "cannot be characterized as clear evidence associating appellant with other crimes." *State v. Hornbuckle,* 769 S.W.2d 89, 96 (Mo. banc), *cert. denied,* 493 U.S. 860, 110 S.Ct. 171, 107 L.Ed.2d 128 (1989).

The point is denied.

### G.

Brown also believes his counsel should have objected to police officer Hardy's testimony that he found a pistol in Brown's apartment. In his testimony, the officer listed the items he recovered in his search, including the paint chips matching those found on Janet's body, wire coat hangers, and a gun. Contrary to Brown's assertion, the record shows that his counsel objected to the gun's introduction on Fourth Amendment grounds and later on grounds of relevancy and that the trial court excluded the gun from evidence. The gravamen of Brown's complaint seems to be trial court error in not declaring a mistrial *sua sponte.*

The trial error is not reviewable under Rule 29.15.

The point is denied.

### H.

Brown claims that his counsel was ineffective in failing to object to statements made by the prosecutor in opening statement and closing argument. None of the statements constituted improper opening statement or closing argument.

#### 1.

Three of the statements paraphrased testimony to the effect (1) that the police looked more closely at Brown when they learned he was Vernon Brown not Thomas Turner; (2) that Donna Denny, an employee at the plasma center, feared Brown's capacity for violence; and (3) that the absence of seminal fluid in Janet's body did not preclude sexual assault. The evidence supported each statement and was relevant to issues in this case. There was, therefore, no basis for finding counsel ineffective for failing to object.

#### 2.

Five of the offending arguments represented fairly commonplace efforts on the part of the prosecutor to argue the credibility of her witnesses. The prosecutor argued that the jury heard from "impressive witnesses;" Brown claims that the prosecutor's use of those words improperly placed the prestige of her office behind certain witnesses. The prosecutor said the "evidence is uncontradicted and unrefuted;" Brown complains the state improperly commented on his refusal to testify. The prosecutor attempted to attribute the failure of police to nail down a crucial date to Brown's selective memory of details; Brown characterizes this as "burden shifting." The prosecutor suggested that witness Donna Presley, a neighbor, took note of Janet ascending Brown's porch steps because she had a daughter she worried about; Brown calls this "victim impact" argument. Finally, the prosecutor sought, on rebuttal, to contradict the defense claim that Brown's stepsons could not remember the events by asking "what kind of human being cannot be haunted by the sight of what went on in that basement?" Brown argues that the prosecutor attempted to personalize the case and make the jury "experience Janet's death." Not only does Brown strain credulity in order to transform the mundane into the prejudicial, he fails to offer a shred of applicable authority to support his claim of prejudice.

The point is denied.

### 3.

Brown challenges one other statement of the prosecutor to which he feels his counsel should have objected. In closing, and after having discussed each element of the evidence specifically, the prosecutor summed up by arguing that the "evidence clearly shows that [Brown] coolly reflected before, during and after the crime." Brown claims this statement misled the jury as to the law, apparently because it juxtaposed the idea of "cool reflection," from the first degree murder instruction, with the words "before, during and after," not found in the instruction. Counsel's failure to object displayed an understanding of proper argument.

The point is denied.

### I.

Brown alleges that the motion court erred in refusing to order relief for counsel's ineffective preservation of his *Erwin* point. Brown's trial took place in October of 1988, and his new trial motion came shortly thereafter. This Court decided *Erwin* in 1993. "Trial counsel's performance is evaluated by reference to the law existing at the time of trial." *State v. Chambers*, 891 S.W.2d 93, 106 (Mo. banc 1994). Failure to predict a change in law is not ineffective assistance of counsel. Denied.

### J.

The fact that Brown's counsel put on no evidence during the penalty phase forms the basis for several additional claims of ineffective assistance of counsel. Specifically, Brown argues that the motion court erred in not granting relief because his trial counsel (1) did not investigate or present evidence of mental disturbance in mitigation; (2) did not investigate or present any other evidence in support of a life sentence, and (3) did not move for additional funds to facilitate additional investigation. The last claim, of course, assumes not only that the first claims are valid but that lack of funds caused the alleged ineffectiveness. Because the motion court correctly denied relief on the first two grounds, we will not address the third.

At his evidentiary hearing before the motion court, Brown put on what amounted to the case he felt his counsel should have put on during the penalty phase of the trial. Noting gratuitously that the evidence before it did not make a convincing case in mitigation, the motion court correctly explained that Brown's trial counsel had no duty to put on such evidence, provided he made an adequate investigation and a reasonable strategic decision not to do so. *See Walls v. State*, 779 S.W.2d 560, 562 (Mo. banc 1989), *cert. denied*, 494 U.S. 1060, 110 S.Ct. 1538, 108 L.Ed.2d 777 (1990).

Brown's trial counsel testified that Brown did not cooperate with his investigation, which prevented him from learning of potentially mitigating witnesses, and his investigation revealed Brown's history of drug use and violent behavior, which counsel felt would come out on cross-examination of mitigating witnesses. The motion court found Brown's counsel a credible witness and concluded that Brown's counsel employed a reasonable trial strategy. Brown has not shown how that strategic choice prejudiced his defense. *See State v. Feltrop*, 803 S.W.2d 1, 19 (Mo. banc), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991).

As to his failure to put on evidence of a mental disturbance, Brown's trial counsel reviewed available psychiatric evaluations, discussed Brown with psychiatrists who examined him, and considered his own experience with Brown. He chose not to attempt to meet Section 565.032.3(2)'s difficult standard—that mitigation exists if Brown was "under the influence of extreme mental or emotional disturbance." Instead, Brown's counsel offered an instruction in mitigation relying on diminished capacity. Counsel saw little chance of success with the extreme mental or emotional disturbance mitigator and chose not to expend his limited resources to that end. This is a reasonable strategic decision. Moreover, the motion court noted that Brown did not aver a specific mental impairment that trial counsel should and could have proved and which, if proven, would have affected the jury's verdict. This pleading failure alone defeats Brown's claim. *State v. Harris*, 870 S.W.2d

798, 815 (Mo. banc), *cert. denied,* —— U.S. ——, 115 S.Ct. 371, 130 L.Ed.2d 323 (1994).

The point is denied.

### K.

▮ The motion court rejected Brown's related claim that his counsel was ineffective for failing adequately to prepare to rebut the stepson-sodomy evidence during the penalty phase. Brown did not offer any reason to believe that any particular effort on counsel's part would have produced an effective defense to the sodomy evidence. Instead, Brown simply alleged a series of steps counsel did not take in utilizing the limited time and resources available to him, none of which are outcome-determinative. This does not suffice to show constitutionally ineffective assistance of counsel, and the motion court did not clearly err.

The point is denied.

### L.

▮ Brown claims that his counsel provided ineffective assistance in not preparing to meet the Synetta Ford evidence during the penalty phase of his trial. By his own admission during the motion hearing, Brown's counsel did not prepare for the Ford case after the severance order and did not consider that separate murder charge again until he learned of the state's intention to use Brown's confession to that killing as a nonstatutory aggravating circumstance.

The evidence presented during the penalty phase consisted primarily of Brown's own statement implicating himself in the killing and testimony of the medical examiner concerning the cause of Ford's death and her physical condition prior to her death (she had no urinary bladder). Brown's counsel attempted to suppress Brown's statement before trial and resisted its admission with continuous objections in the penalty phase. Nevertheless, Brown insists that counsel's failure to prepare to rebut the evidence constituted ineffective assistance and requires a new trial. He does so, however, without alleging any specific defense that his counsel should have put forth that would have altered the outcome of his trial.

Brown's bare allegation of ineffective assistance of counsel rests on a visceral reaction to counsel's testimony that he did not prepare to counter the Synetta Ford murder confession. Even if one reasonably assumes that counsel was deficient, that assumption meets only the first prong of the *Strickland* test. Brown must also show that outcome-determinative prejudice resulted from counsel's deficiency to prevail under *Strickland.*

Brown fails. First, he offers nothing to support his conclusion that prejudice resulted. He does not inform the Court what counsel could or should have done to blunt the sharp edges of Brown's own words admitting his role in the murder. Second, the state offered the murder of Synetta Ford as a nonstatutory aggravating circumstance. The jury found four statutory aggravating circumstances, none of which were the product of trial court error. Any one of these aggravating circumstances was sufficient to support the death sentence. We cannot conclude that counsel's failure to rebut his client's own words affected the death sentence recommendation.

### M.

Brown insists that his counsel was ineffective in failing to object to Instruction No. 9 during the penalty phase.

Instruction No. 9, which Brown submitted in accordance with MAI–CR3d 313.44, told the jurors that they "may" also consider the following mitigating circumstances:

a. Whether the murder of Janet Perkins was committed while the defendant was under the influence of *extreme* mental or emotional disturbance.

2 [sic]. Whether the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was *substantially* impaired.

[Emphasis added.] The instruction told the jury that if it unanimously found one or more of the mitigating factors, it must impose the sentence of life without parole if it believed that the mitigating circumstance(s) outweighed the aggravating circumstances. Brown did not object to the instruction; in-

stead, he proposed Instruction No. 9a, which differed only by adding the nonstatutory mitigating circumstance that Brown showed remorse for the killing of Janet Perkins. Brown claims that Instruction No. 9 unconstitutionally limited the jury's consideration of mitigating evidence.

*State v. Petary,* 781 S.W.2d 534, 543 (Mo. banc 1989), *vacated and remanded,* 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931, *reaffirmed,* 790 S.W.2d 243 (Mo. banc), *cert. denied,* 498 U.S. 973, 111 S.Ct. 443, 112 L.Ed.2d 426 (1990), holds that "may consider" language in a mitigating circumstance instruction "signifies that the jury is given discretion as to what weight the mitigating evidence should receive" and does not offend the constitution. 781 S.W.2d at 543. Moreover, Instruction No. 9 clearly advised the jury that it "may also consider *any* circumstances which you find from the evidence in mitigation of punishment." [Emphasis added.]

Counsel was not ineffective in failing to object to an instruction that correctly states the law.

The point is denied.

**N.**

The remainder of Brown's argument claims, thirteen in all, involved no objection at trial and thus amount to requests for plain error review and claims of motion court error based on ineffective assistance of trial counsel. We have declined to grant plain error review. As to Brown's claims of motion court error, we conclude after a careful review that Brown's counsel was not ineffective. We have reviewed the arguments of which Brown complains and find no reasonable probability that prejudice resulted from counsel's failure to object to them. An analysis of each statement would offer no precedential value and serve no subsequent purpose beyond inviting death penalty appellate counsel to load the appellate shotgun with more ill-aimed verbiage.

**VII.**

■ This Court is required to review, pursuant to Section 565.035.3, RSMo 1994, the sentence of death imposed in this case.

We find no evidence that the sentence was imposed "under the influence of passion, prejudice, or any other arbitrary factor." § 565.035.3(1).

We find that the evidence supports the jury's finding of the statutory aggravating circumstances under Section 565.032.2(1), (7), (10), and (12), as noted in various parts of this opinion. § 565.035.3(2).

We next determine whether the sentence of death "is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime, the strength of the evidence, and the defendant." § 565.035.3(3).

> If the case, taken as a whole, is plainly lacking circumstances consistent with those in similar cases in which the death penalty has been imposed, then a resentencing will be ordered. In those rare instances where no prior similar cases exist, this Court will make an independent judgment as to whether the imposition of death is freakish or wanton under the facts of the case.

*State v. Ramsey,* 864 S.W.2d 320 (Mo. banc 1993), *cert. denied,* — U.S. —, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994).

The facts of this case appear to make it one that is not easily comparable with other capital murder cases. The victim was nine years old, was bound hand to foot behind her back with a wire hanger, was strangled to death, and her body hidden in an alley by a dumpster. Brown knew that the family was searching for the girl, but feigned ignorance. He had a previous sexual assault charge, there was evidence he had sexually abused his stepsons, and he confessed to killing a woman a few years earlier. There was little mitigating evidence.

In *State v. Lingar,* 726 S.W.2d 728 (Mo. banc), *cert. denied,* 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987), the capital murder defendant's victim was a boy who was a junior in high school. The victim had run out of gas and accepted a ride with the defendant to a gas station. The defendant made the victim remove his clothing and tried to force him to masturbate. The defen-

dant shot the victim in the back after the victim had received permission to get out of the car and urinate. After more shots and blows to the head, the victim was left on the ground to die. The death penalty was imposed and upheld.

In *State v. Mercer*, 618 S.W.2d 1 (Mo. banc), *cert. denied*, 454 U.S. 933, 102 S.Ct. 432, 70 L.Ed.2d 240 (1981), the capital murder defendant raped the victim (as did other men at the scene of the crime) and strangled her. Her body was taken out of the house and dumped over a fence in a field. The death penalty was imposed and upheld.

The victim in this case was a helpless child. Helplessness of the victim is noted as a factor in death penalty cases. (*Ramsey*, 864 S.W.2d at 327) (also note defendant was of low average intelligence and one of the victims had her hands tied behind her back).

The death penalty has been imposed where the victim was killed to eliminate a witness and to avoid arrest. *State v. Six*, 805 S.W.2d 159, 169 (Mo. banc), *cert. denied*, 502 U.S. 871, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991). And it has been imposed where there was "a prior serious assaultive conviction and other serious misconduct." *State v. Sidebottom*, 753 S.W.2d 915, 927 (Mo. banc), *cert. denied*, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988).

This Court finds the imposition of the death penalty in this case is not excessive or disproportionate.

## VIII.

The judgments are affirmed.

All concur.