**STATE of Missouri, Respondent,**

v.

**Robert J. SETTLE, Appellant.**

**No. WD 34276.**

Missouri Court of Appeals,
Western District.

Feb. 28, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 1, 1984.

Application to Transfer Denied
June 19, 1984.

James R. Wyrsch and Mary Beth Gardner, Kansas City, for appellant; Koenigsdorf, Kusnetzky & Wyrsch, Kansas City, of counsel.

John Ashcroft, Atty. Gen., and Sandra K. Stratton, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

PRITCHARD, Presiding Judge.

Appellant was convicted by the verdict of a jury of the sale of a controlled substance, hydromorphinone (dilaudid), and his punishment was assessed at eight years imprisonment which the court imposed in accordance with the verdict.

The facts are these: Detective Larry L. Sprouse was employed with the Kansas City Drug Enforcement Unit of the Kansas City Police Department, with duties of purchasing narcotics as an undercover agent in August, 1981. Sprouse had been contacted by phone by one Fawn Overcash, an informant, who told him that appellant was willing to sell him dilaudid. Fawn gave Sprouse a telephone number which he called from the DEU office in a closed telephone booth. Before calling, Sprouse attached a Sony portable tape recorder to the telephone and recorded the conversation which took place at 12:47 p.m., on August 27, 1981. The purpose of that call was to arrange a price of the narcotic. Sprouse was to call later, which he did, from a 7–Eleven store, and he was told to meet appellant at the Pizza Hut at 39th and State Line. At about 1:25 p.m., at the latter address, Sprouse observed a yellow Cadillac drive up and park next to him and another officer. Sprouse got out, leaving the other officer in his car, and entered the Cadillac on the passenger side. A young white woman, Cathy, was seated in the middle, and a man, identified as "Bob", was in the driver's seat. The young woman handed Sprouse three pills. He tried to hand Bob $100, but the young woman took the money, and $20 more which she said they needed. As Sprouse was getting ready to leave, he thanked them and "Mr. Settle said that was okay, no problem, he could get all I wanted, just give him a call."

Sprouse was asked, "Q After the phone conversation, did you have occasion to meet with Mr. Settle? A Yes, sir, I did. Q Have you talked with him in person other times after that? A Yes. Q You have talked with him on the phone at other times after that, is that correct? A Yes, sir. Q I would ask you, the person you talked to on August 27th, 1981 at 12:47, as reflected on the tape, State's Exhibit No. 1, is that the defendant, Bob Settle? A Yes, sir, it is." And, "Q So as to be clear on this phone conversation of August 27th, you talked with this gentleman several times on the phone since then, haven't you? A Yes, sir. Q And you have met him in person after August 27th? A Yes, sir. Q There is no doubt in your mind the man you talked to on August 27th at 1247 is the defendant, Bob Settle? A None whatsoever."

Robert Frank Booth, a chemist, conducted a laboratory analysis of the three pills and found them to be hydromorphinone, an opiate derivative, which is a controlled substance.

The tape recording was received into evidence, over appellant's objection, along with a transcription thereof, which Sprouse testified to be accurate, but no objection was made to the receipt into evidence of the transcription.

■ Appellant first attacks the admission of the tape recording of the telephone conversation on several specific contentions

going to his claim of a lack of sufficient foundation therefor. He says that the state failed to show that the recording device was capable of taking testimony. The factors to be taken into account for the admissibility of tape recordings are set forth at page 44 of *State v. Spica*, 389 S.W.2d 35 (Mo.1965), citing 58 ALR 2d 1027. Here, obviously the Sony recording device did in fact record the first telephone conversation as testified to by Sprouse. He played it shortly afterwards to the prosecutor, to defense counsel, to other officers of the police department, it was played directly to the jury, and a transcript of it was made as the evidence shows. This shows that the recording device was capable of taking testimony in accordance with the first requirement of the *Spica* case. See *United States v. Moss*, 591 F.2d 428, 433 (8th Cir.1979), where it was said, " * * * the very fact of the existence of the tape recordings establishes the recording devices were capable of picking up sounds."

■ Appellant next says that there was no showing that Sprouse was competent to operate the recording device. He hooked the device to the telephone jack and operated it himself. Although there was no showing that he had ever done that before and obtained a good recording, or that he had received training on the procedure, or that the process was so elementary that no training was required, the fact of an audible and understandable recording was made remains. That fact would tend to establish that Sprouse was competent to operate the machine, a conclusion analogous to the holding in *United States v. Moss*, supra.

■ Contending that the fourth requirement of the *Spica* case was not complied with, appellant says that the authenticity and accuracy of the tape recording were never established. The evidence is that Sprouse sealed and marked the tape which thereafter remained in police custody. He testified that no deletions or additions were made to the tape. This evidence was sufficient to establish the authenticity

and correctness of the tape recording. See *United States v. Hassell*, 547 F.2d 1048, 1054 (8th Cir.1977), cert. denied, 430 U.S. 919, 97 S.Ct. 1338, 51 L.Ed.2d 599; and compare *Williams v. State*, 558 S.W.2d 671, 674–675[6] (Mo.App.1977), where it was said that defendant did not point to any evidence to show that any change, addition or deletion had been made in the tape. (The officer there testified (as here) that no changes, alterations or deletions had been made in the tape.) As noted, the tape being sealed, marked and retained in police custody, shows that it was properly preserved, the fifth requirement of *State v. Spica*, supra.

■ Appellant says that there was a failure to identify the speaker on the tape recording (and telephone conversation). Although Sprouse had not spoken with appellant prior to the time he first telephoned him and hooked up the tape recorder to the telephone, he testified that he had spoken with him several times thereafter, both in person and by telephone. There was no doubt in his mind that the telephone conversation (tape recorded) of August 27, 1981, was with appellant. There was sufficient identification of appellant as the speaker. See *State v. Steele*, 445 S.W.2d 636 (Mo.1969); *State v. McGee*, 336 Mo. 1082, 83 S.W.2d 98 (1935). Nor was the identification based upon hearsay testimony (of the informant) because that evidence was not offered to prove the truth of the subsequent telephone conversations, but merely to explain Sprouse's subsequent act of making the telephone call. Compare *State v. Brooks*, 618 S.W.2d 22, 25[6, 7] (Mo. banc 1981).

■ No objection was made to the admission of the transcription of the tape recording. State's counsel, during pre-trial proceedings, announced his intention to play the tape to the jury and to provide it with the transcription. Appellant's counsel then expressed concern about the chain of custody of the tape and foundational requirements for its admission. He suggested that it might be better if the transcript was given to the jury after the tape was

played so he could make inquiry as to the method of transcription if the tape itself appeared to be incoherent. After the tape was played, counsel withdrew his expression of concern about the transcription. The record shows that the tape recording was played to defense counsel, presumably in pre-trial discovery proceedings, so he was undoubtedly familiar with its content. Although there was no stipulation as to the accuracy of the transcript, clearly the parties agreed to its use in evidence. There was no indication that the tapes were inaudible so that the transcripts would be an aid to the jury in listening to the tapes, and that the suggested guidelines of *U.S. v. McMillian*, 508 F.2d 101, 105–106 (8th Cir. 1974), quoted in *State v. Montgomery*, 590 S.W.2d 105, 108[5] (Mo.App.1979), should have been followed. See also *State v. Engleman*, 634 S.W.2d 466, 480 (Mo.1982). Nevertheless, the matter will be examined to see if there was existent plain error under Rules 29.12(b) and 30.20. Detective Sprouse testified that the transcription was accurate. He heard the telephone conversation, and obviously listened to the tape recording thereof. Quite apparently, the transcription was duplicative and cumulative of the tape recording. In the trial court's discretion [*State v. Macone*, 585 S.W.2d 64, 68[3] (Mo.App.1979) ], there was no error in its admission and its consideration by the jury. Nor does the admission of the transcription violate the best evidence rule, for both it *and* the tape recording were admitted into evidence. See *State v. Brown*, 607 S.W.2d 881, 885 (Mo.App. 1980). Furthermore, appellant does not suggest how he was prejudiced by the admission of the transcription.

None of appellant's contentions, above reviewed, have merit, and Point I, raising the issue of the admissibility of the tape recording and the transcription thereof, is overruled.

After the jury retired for its deliberations, the trial court received a "buzz" from the jury room. There being no one available to answer that call, the trial court himself went to the jury room to see what it wanted. In Point II, appellant claims

prejudicial error in the trial court's contact with the jury during its deliberations. Immediately after that contact, this record was made: "THE COURT: The record should reflect that at approximately 12:00 o'clock, I received a buzz from the jury. I went up to see what they wanted. The jury foreman, Mr. Harvey, asked me for a copy of the transcript of the telephone conversation. I told him to put it in writing and sign it, whoever the foreman is. Upon which I received from Mr. Harvey, I believe the name is Harry James Harvey, yes, who handed me a piece of paper which stated the following: 'We would like to see the transcript.' The transcript is State's Exhibit 2, which has been received in evidence. It is the Court's intention to send that transcript to the jury. Are there any objections? MR. HALL: Not by the State. MR. FLUKER: No. THE COURT: Thank you very much."

Appellant suggests that the foregoing record was not made under oath and that, on the hearing of the motion for new trial, the trial court could not independently recall the occurrence. The statement, however, was clearly and promptly read into the record after the event, and thus imports verity as to what occurred. Appellant says that the state failed to show affirmatively that the jury was not subjected to improper influences. Obviously, that is the rule. See *Chinn v. Davis*, 21 Mo. App. 363, 366–69 (1886), quoted at page 141 of *State v. Cooper*, 648 S.W.2d 137 (Mo. App.1983). In this case, however, the trial court entered upon the record precisely what happened, showing that no improper influence was exercised upon the jury, and thus there was no point in requiring the state to go forward with the evidence. Indeed, in testifying on the motion for new trial, appellant's counsel stated that he did not object to the fact of the jury contact because he did not consider that there was any harm done. Upon the facts here, no prejudicial error occurred. The trial court, however, indicated that it was his practice to respond to the buzzer, and ask the jury to write (the question) down. Undoubted-

ly, it would be better practice in that situation to have the jury returned to open court, in the presence of counsel, if practicable, to explore any questions in accordance with *Chinn v. Davis*, supra. Thus, at least, there would be obviated any real or imagined claim of error as is presented in this Point II, which is overruled.

In Point III, appellant raises the issue of alleged ineffectiveness of his trial counsel. Ordinarily that issue is reviewable only after post conviction relief proceedings under Rule 27.26, but an exception exists where the record has been made, here on the motion for new trial. The motion for new trial is quite general in its allegations of ineffective assistance of counsel, but the issue will nevertheless be addressed upon the claims made in appellant's brief, with reference to the facts developed in the post-trial hearing.

Appellant first says his counsel was ineffective in failing to object to the admission of the transcription of the taped conversation. It is above held that the transcription was properly admitted into evidence under the circumstances of this case, so an objection would have been without merit. See *Wolfe v. State*, 613 S.W.2d 892, 894 (Mo.App.1981). And again, appellant does not suggest how the alleged inaction of his counsel prejudiced him, which must be shown in order successfully to press a claim of ineffective assistance of counsel. *Seales v. State*, 580 S.W.2d 733, 736[3] (Mo. banc 1979); *State v. Moon*, 602 S.W.2d 828, 837[18] (Mo.App.1980).

Next, appellant says his counsel was ineffective in failing to object to the admission of the three dilaudid tablets on the ground that a proper chain of custody was not established. He surmises that the exhibit containing the tablets was (still) sealed, and therefore that tablets tested in the laboratory could not have been the ones received into evidence. Clearly, Detective Sprouse's testimony is that the sealed envelope, which he broke in court, was that of the Regional Crime Laboratory, not that of the police department. The chemist testified that he opened the sealed bag when he received it, performed the tests, then re-

sealed it with the laboratory seal. Under this evidence, there was no basis for the objection on the ground of a lack of showing of a proper chain of custody, *Wolfe v. State*, supra, and counsel was not ineffective for failing to register an objection to the evidence.

Appellant next says his counsel was ineffective for failing to object to what he denominates as the hearsay testimony of Detective Sprouse that he telephoned appellant based upon the tip of an informant. The identity of appellant was not in any way premised upon the tip. As above ruled, the testimony was not offered to prove the truth of the assertion, but only to explain Sprouse's subsequent actions. See *State v. Brooks*, 618 S.W.2d 22, 25[6, 7] (Mo. banc 1981). Thus, again, there was no basis for an objection upon hearsay grounds.

Lastly, appellant says his counsel was ineffective in failing to investigate three proffered witnesses to the defense. Counsel did tell appellant to bring the witnesses to his office so he could talk to them, but the witnesses never appeared. Apparently, the defense would have been that what was sold to Sprouse were concert tickets, not dilaudid. Counsel advised appellant that such a defense would have been ludicrous and insulting to the jury and would have done him more harm than good. It was a matter of trial strategy, within the control of counsel, and ineffectiveness is not shown.

All of appellant's contentions as to the effectiveness of his trial counsel do not fall below the standards of *Seales v. State*, supra, and Point III is overruled.

In Point IV, appellant claims error in the trial court's refusal to grant a continuance on an application filed August 4, 1982, six days before trial, which began August 10, 1982. The record shows that appellant had been granted five previous continuances. The August 4, 1982, application did not comply with Rule 24.09, or more importantly, with Rule 24.10, in that there were no facts shown to show the materiality of the evidence sought to be obtained; that the attendance of the wit-

ness would be procured within a reasonable time; what particular facts the affiant believes the witness will prove and that he knows of no other person whose evidence or attendance he could have procured at the trial, by whom he can prove or so fully prove the same facts; and that such witness is not absent by the connivance, consent, or procurement of the applicant, and that the application is not made for vexation or delay, but in good faith for the purpose of obtaining a fair trial. The application here, without any supporting affidavit, states merely that the witness' motor vehicle had broken down in Arizona; appellant had wired her $200 for needed repairs; and (only) that the witness was important to the defense of the charges against appellant, and to go to trial without the witness would result in an injustice to him. The trial court did not err in overruling the instant application for continuance in view of its deficiencies of allegations, and lack of supporting affidavit, *State v. McGinnis*, 622 S.W.2d 416, 420[6, 7] (Mo.App.1981), and Point IV is overruled.

The judgment is affirmed.

All concur.

John Edward Cash, Kansas City, for appellant.

Diane Garber, Pros. Atty., Robert R. Sterner, Asst. Pros. Atty., Fulton, for respondent.

Before SHANGLER, P.J., and KENNEDY and LOWENSTEIN, JJ.