

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | **WD78851** |
| Respondent, | ) | |
| v. | ) | **OPINION FILED:** |
| | ) | |
| MAURICE PARNELL WEBBER, | ) | **December 6, 2016** |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**Honorable Wesley Brent Powell, Judge**

**Before Division One: Thomas H. Newton, P.J.,**
**Cynthia L. Martin, and Edward R. Ardini, Jr., JJ.**

Mr. Maurice P. Webber appeals his conviction in Jackson County Circuit Court, following a jury trial, for three counts of the class A felony of forcible rape, § 566.030,[1] three counts of the class A felony of forcible sodomy, § 566.060, and one count of the class A felony of attempted forcible sodomy, § 566.060, for which he was sentenced to a total thirty-four years imprisonment in the Department of Corrections. He challenges the forcible rape and forcible sodomy convictions under the necessarily incident provision of Missouri's accomplice-liability statute, § 562.041.2(2), argues ineffective assistance of counsel, as cognizable on direct appeal, for failure to raise a statute-of-

---

[1] Statutory references are to RSMo (1986), as supplemented through September 2, 1991, unless otherwise indicated.

1

limitations defense and the necessarily incident exception to accomplice liability, and asserts manifestly unjust court error in instructing the jury on sentencing. We affirm in part, reverse in part, and remand solely for retrial of his sentences.

The seventeen-year-old victim attended a rock concert in September 1991 at the former Sandstone Amphitheater in Kansas and consumed a beer on an empty stomach.[2] Afterward, a friend drove her to her car, which was parked at a 24-hour market where she worked. The victim quickly realized on her way home that she should not be driving and parked in an apartment lot so she could sleep for awhile. She testified at trial that she became aware after falling asleep that people had surrounded her car. When she was fully awakened, the victim realized that she was in another car, in the back seat, with her head in one person's lap and her feet in another's. Her head was covered with a cloth that was held firmly on her face, but she was aware from the sound of voices that two other individuals were in the front seat. The men pulled the rings off her fingers and took a small amount of cash out of her pockets.

The car stopped near a picnic bench in what the victim later learned was Swope Park, in Jackson County, Missouri. It was still dark, and one or two of the men's faces were partially covered with cloths. The victim pleaded with the men not to kill her, and she was told that if she cooperated she would not be killed. The men ordered her out of the car, told her to remove her pants, and then three of them took turns penetrating her vaginally and orally with their penises, at times simultaneously. One man tried to penetrate her anally with his penis, but was unsuccessful, and, after one

---

[2] We present the facts in the light most favorable to the verdict. *State v. O'Brien*, 857 S.W.2d 212, 215-16 (Mo. banc 1993).

of the men warned the victim not to tell anyone or he would kill her, they got back in the car and drove away.

Terrified that the men would return, the victim ran or wandered around for some time, searching for a phone or help, and hiding when she saw approaching cars. A good samaritan finally called the police for her. The police took the victim to a hospital where evidence was collected, including swabs of her mouth, vagina, cervix, and anus, and her panties. The forensic testing available in the early 1990s could discern little more from the collected swabs than the presence of sperm from three individuals, so no suspects could be found until the case was reopened in 2009, when precise DNA testing allowed the identification of two of the perpetrators. The police learned that Mr. Webber was an alleged participant, and a buccal swab from him was definitively matched to DNA found on the victim's panties.[3] Though not definitive, Mr. Webber's DNA also matched the victim's cervical swab.[4]

Mr. Webber was tried by a jury in May 2015, and, after the trial court overruled his boilerplate motions for judgment of acquittal at the close of the State's evidence and at the close of all evidence, he was convicted on all seven charges.[5] In a separate proceeding before the same jury, the court gave the following sentencing instruction as to each count:

> [T]he punishment prescribed by law for [the offense] is one of the
> following:

---

[3] The lab analyst found a genetic match of one in sixty-three quadrillion between the victim's panty stains and Mr. Webber's buccal swab. The Kansas City crime lab considers this to be a DNA identification because its threshold for a match is one in seven trillion.

[4] The lab analyst found a one in 60.5 billion relationship between the cervical swab and Mr. Webber's buccal swab.

[5] Additional details about Mr. Webber's objection to the court instructing the jury on a lesser-included offense on statute-of-limitations grounds appear below in the discussion of point five.

1. life imprisonment,
2. imprisonment for a term of years fixed by you, but not less than ten years.

Mr. Webber made only a "general objection" to these instructions. The jury sentenced Mr. Webber to twenty-four years on each count. The trial court then denied Mr. Webber's motion for new trial, which included none of the issues raised before this Court, and sentenced him to twenty-four years of imprisonment on each of six counts, to run concurrently, and to a consecutive term of ten years' imprisonment on one count of the class A felony of forcible sodomy. Mr. Webber filed this appeal.

**Legal Analysis**

**Accomplice Liability**
**Necessarily Incident Exception**

The first four points involve the necessarily incident exception to accomplice liability under section 562.041. Mr. Webber argues that (1) the evidence was insufficient to convict him of three counts of forcible rape and three counts of forcible sodomy under an accomplice-liability theory, because the State failed to prove that his acts were not necessarily incident to the crimes "where the victim is subjected to sexual intercourse [and deviate sexual intercourse] with more than one person," and (2) the trial court erred in failing to instruct the jury that the necessarily incident exception applies "where a defendant is charged under accomplice liability with the crime[s] of forcible rape [and forcible sodomy] in which he subjects [the] victim to sexual intercourse with more than one person."

The offenses here arose from a gang rape and sodomy involving three perpetrators. Section 566.030 classifies forcible rape as a class A felony where the actor "subjects the victim to sexual intercourse or deviate sexual intercourse with more

4

than one person." § 566.030.2. Similarly, as to forcible sodomy, section 566.060 states that where the actor "subjects the victim to deviate sexual intercourse or sexual intercourse with more than one person, . . . forcible sodomy or an attempt to commit forcible sodomy is a class A felony." § 566.060.2. Missouri's accomplice-liability statute makes a person criminally responsible for another person's conduct under the following circumstances and subject to the following exceptions:

1. A person is criminally responsible for the conduct of another when

(1) The statute defining the offense makes him so responsible; or
(2) Either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.

2. However, a person is not so responsible if:

(1) He is the victim of the offense committed or attempted;
(2) The offense is so defined that his conduct was necessarily incident to the commission or attempt to commit the offense. If his conduct constitutes a related but separate offense, he is criminally responsible for that offense but not for the conduct or offense committed or attempted by the other person;
(3) Before the commission of the offense he abandons his purpose and gives timely warning to law enforcement authorities or otherwise makes proper effort to prevent the commission of the offense.

3. The defense provided by subdivision (3) of subsection 2 is an affirmative defense.

§ 562.041. We have observed that this statute "is designed to make individuals who could not be guilty of a crime solely on the basis of their own conduct, guilty nonetheless as an accessory." *State v. Barker*, 442 S.W.3d 165, 168 (Mo. App. W.D. 2014).

5

Mr. Webber argues that the necessarily incident exception set forth in the accomplice-liability statute applies to his case where the crimes charged required participation by more than one person. In other words, because Mr. Webber's participation in relation to his accomplices was as the other person needed to reclassify/enhance their offenses as class A felonies, his participation was necessarily incident and he could not be held responsible as an accomplice for their crimes. He claims that this issue is not an affirmative defense that would be waived if not timely raised because only the third exception is specified as an affirmative defense in the statute. Concluding on a statutory-construction basis that the necessarily incident exception is an element that must be negated by the State and that the State failed to produce sufficient evidence to do so, Mr. Webber argues that his failure to assert the necessarily incident exception before or during trial or in his motion for new trial did not waive the issue for purposes of appeal.[6] He claims that the appropriate remedy is to remand the case for entry of a judgment of acquittal on the three counts of class A felony rape and three counts of class A felony sodomy.

We find it unnecessary to determine how to classify this exception, agreeing with the State that it does not apply.[7] In *Bass v. State*, 950 S.W.2d 940, 944 (Mo. App.

---

[6] *See State v. Claycomb*, 470 S.W.3d 358, 361 (Mo. banc 2015) (stating that, in a bench-tried case, sufficiency claims are "preserved on appeal even if not raised or not timely raised in the trial court."). Under Rule 29.11(d), a sufficiency of the evidence claim also need not be included in a motion for new trial in a jury-tried case to preserve the alleged error for appellate review.

[7] The outcome would be the same whether the matter were reviewed under a sufficiency standard or for plain error. Under a sufficiency standard, we review "all of the evidence . . . in the light most favorable to the prosecution." *State v. O'Brien*, 857 S.W.2d 212, 215-16 (Mo. banc 1993). We conduct a two-step review for plain error: first we "examine[] the record to determine whether the trial court committed error, affecting substantial rights, that was 'evident, obvious, and clear,' and then we "determine whether a manifest injustice or a miscarriage of justice" will result from the error. *State v. Freeman*, 189 S.W.3d 605, 608-09 (Mo. App. W.D. 2006). Because the exception does not apply, we are not concerned with whether sufficient evidence supported it or the court committed plain error.

6

W.D. 1997), this Court discussed the exception in upholding the conviction of a woman charged with rape for forcing her eleven-year-old daughter to have sexual intercourse with another person. As to the accomplice-liability statute, we quoted a comment to the proposed law and explained how it applies as follows:

> The Comment first notes that Section 562.041.2(1) protects the victim of a crime from being found guilty as an accessory, as in the case of an underage girl who consents to sex with a man later convicted of statutory rape. The Comment then explains the exception for "necessarily incident" conduct, stating:
>
>> Subsection 2(2) extends the same protection to persons who do not fall neatly into the category of victims. For example, if a statute simply makes the giving of a bribe a crime should the recipient be guilty of a violation of that statute on the basis of aiding and abetting. If he should be, this should be covered in the statute on bribery. This subsection does not prevent his being criminally liable, it merely requires the statu[t]e defining the offense to so specify. The subsection does make it clear that it does not bar conviction for a related offense based on his own conduct, as, for example, if there were another statute making it a crime to receive a bribe.
>
> Comment to 1973 Proposed Code § 562.041.
>
> As one commentator has noted, using the same rationale, if a statute makes prostitution a criminal offense, a person soliciting that prostitute could not be found guilty under Section 562.041.2(2) based on aiding the prostitute because his conduct is "necessarily incident" to the crime of prostitution. The patron could, however, be found guilty under a separate statute which makes soliciting a prostitute a crime.
>
> These examples make clear that the "necessarily incident" exception refers to situations where the crime could not have been committed without the other person's participation. Here, Mr. Clark could have committed the rape without Ms. Bass'[s] participation. Therefore, her conduct was not "necessarily incident" to the crime, and she does not fall within the exception to accessory liability.

*Id.* (citation omitted).

7

Here, the evidence showed that Mr. Webber himself had sexual intercourse and deviate sexual intercourse with the victim and subjected the victim to sexual intercourse and deviate sexual intercourse with more than one person—himself and at least one of the other perpetrators. So the evidence was sufficient to convict him, based on his own conduct, of one count of the class A felony of forcible rape and one count of the class A felony of forcible sodomy. Because three men perpetrated these acts, each of Mr. Webber's two accomplices could have committed felony A rape and felony A sodomy without Mr. Webber's participation, because each of them subjected the victim to sexual intercourse and deviate sexual intercourse with more than one person, i.e., themselves and another person who need not have been Mr. Webber. His conduct was not necessarily incident to their crimes. Because the victim testified that she was penetrated vaginally and orally three times by three men, the evidence was sufficient to hold Mr. Webber criminally responsible for his own acts and for those of each of the other two perpetrators who were all acting in concert, and no exception to accomplice liability applied. Nor did the trial court err in failing to *sua sponte* instruct the jury as to the necessarily incident exception. Points one through four are denied.

## Statute of Limitations
## Attempted Forcible Sodomy

In the fifth point, Mr. Webber argues that the trial court plainly erred in failing to find the charge of attempted forcible sodomy barred when Mr. Webber raised the statute of limitations in objecting to a jury instruction on a lesser-included offense. Mr. Webber did not object on statute-of-limitations grounds to instruction no. 13—the verdict director for count VII, felony A attempted forcible sodomy—which inadvertently lacked the aggravating element of subjecting the victim to deviate sexual

8

intercourse or intercourse *with more than one person*.[8]   Nor did Mr. Webber raise

anything other than a general objection to the accompanying sentencing form, which

set forth the possible range of punishment for count VII as "life imprisonment" or

imprisonment for a term of years but not less than ten years, which, albeit flawed,

recited the punishment for a felony A offense.[9]   Counsel did, however, state during the

---

[8] Instruction no. 13 stated,

As to Count 7, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about September 2, 1991, in the County of Jackson, State of Missouri, the defendant or another person tried to place his penis in [the victim's] anus, and

Second, that such conduct was a substantial step toward the commission of the offense of forcible sodomy, and

Third, that defendant or another person engaged in such conduct for the purpose of committing such forcible sodomy,

then you are instructed that the offense of forcible sodomy has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that with the purpose of promoting or furthering the commission of that forcible sodomy the defendant acted together with or aided the other persons in committing the offense,

then you will find the defendant guilty under County 7 of forcible sodomy.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

A person commits the crime of forcible sodomy when he has deviate sexual intercourse with another person without that person's consent by the use of forcible compulsion.

As used in this instruction, "substantial step" means conduct which is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense of forcible sodomy.

Instruction nos. 7, 8, 9, 10, 11, and 12 all included as an element that "the defendant or other persons subjected [the victim] to sexual intercourse [or deviate sexual intercourse] with more than one person."

[9] Further discussion about Mr. Webber's sentences appears below.

instruction conference that Mr. Webber did not want to waive a statute-of-limitations defense by agreeing to a jury instruction on a lesser-included offense. The statement was made during a discussion that involved an instruction on "sexual assault" that the State had submitted as a lesser-included offense. No lesser-included offense instruction was given to the jury other than the mistaken verdict director noted above.[10] The verdict and sentence on count VII, which had been charged as a class A felony, were recorded as class A felony and twenty-four years, respectively.[11]

As Mr. Webber concedes, "[t]he failure of a defendant to raise a statute of limitations defense results in the waiver of that defense, and a defendant 'is precluded from raising the issue on appeal.'" (citing *State v. Cotton*, 295 S.W.3d 487, 492 (Mo. App. E.D. 2009)). The Eastern District noted in *Cotton* that this requirement is supported by "sound reasoning." *Id.* at 491. In this regard, the court stated that the Legislature has defined circumstances that toll the limitations period and set forth "a number of statutory exceptions whereby the State may nevertheless commence prosecution, even though the period of limitations has expired." *Id.* at 491-92. In the court's view, if the issue is raised for the first time on appeal, the State is not afforded the opportunity "to respond to the defense, showing that the statute has not run, that it

---

[10] The trial court read instruction no. 13 as written to the jury, and Mr. Webber made no objection to it when read. Nor did Mr. Webber object when the State closed and discussed the elements making rape, sodomy, and attempted sodomy class A felonies, i.e., subjecting the victim to deviate sexual intercourse and intercourse with more than one person. The State specifically argued as to count VII that the three perpetrators, including Mr. Webber, acted in concert.

[11] If the attempted forcible sodomy count had been charged as an unclassified felony and if Mr. Webber had been convicted of attempted forcible sodomy as an unclassified felony, he would have been subject to a term of imprisonment of "life imprisonment or a term of years not less than five years." § 566.060.2. Nowhere has he argued that the sentencing instruction for count VII was incorrect, which would be a corollary to his claim that attempted forcible sodomy was a lesser-included offense, to which he purportedly objected on statute-of-limitations grounds, due to the way the trial court defined the offense for the jury in the verdict director for count VII.

has been tolled, or that an exception applies." *Id.* at 492. Mr. Webber contends, however, that he did not waive the defense because he relied on it during the instruction conference to orally object to a lesser-included offense jury instruction and the State did not respond to his objection. He suggests that it was simply not preserved for review, so we may review the point for plain error.[12]

To raise a statute-of-limitations defense, a defendant generally seeks to dismiss the time-limited charge by motion. *See, e.g., State v. Graham*, 149 S.W.3d 465, 466 (Mo. App. E.D. 2004) (considering whether trial court erred in sustaining defendant's motion to dismiss based on running of limitations period, court reverses ruling). The matter can be raised, however, at any time before "final disposition" of the case. *Dorris v. State*, 360 S.W.3d 260, 268 (Mo. banc 2012) (citing *Longhibler v. State*, 832 S.W.2d 908, 910-11 (Mo. banc 1992) (in which our supreme court ruled that a statute-of-limitations defense, which is non-jurisdictional, raised in a post-conviction motion to set aside a sentence imposed as part of a plea bargain had been waived by the defendant's guilty plea; as an affirmative defense, it must be raised at the earliest opportunity or, at the latest, before conviction or plea)). And, of some relevance, our courts have held that waiver can occur where a defendant submits a lesser-included offense instruction. *See State v. Leisure*, 796 S.W.2d 875, 879 (Mo. banc 1990) (noting jarring inconsistency in allowing defendant to gamble on "jury's sense of mitigation or mercy by submitting" a lesser-included offense instruction "and in so doing sub silentio waive the bar of limitation" and then receiving merciful consideration, reverse course, "assert the bar and ask the Court on appeal to free him from all accountablility").

---

[12] Mr. Webber observes that this point was not addressed in his motion for new trial, so it has not been preserved for purposes of appeal.

Conversely, it would appear, for the sake of argument, that an oral objection to a lesser-included offense instruction on statute-of-limitations grounds could be sufficient to demonstrate non-waiver for purposes of appeal.

Still, we are not convinced that Mr. Webber did not waive his limitations objection to count VII. Under the mistaken impression that the verdict director contained all of the elements required for the jury to find Mr. Webber guilty of count VII as charged—a class A felony—no objection was made to its submission on limitations grounds. Further, the State, the court, the jury, and Mr. Webber treated the verdict as if the verdict director had led to a felony A conviction. Because no argument has been made that the verdict director, verdict, and sentence, based on a felony A charge, constituted a lesser-included offense or, in fact, was the lesser-included offense to which Mr. Webber did object, we find that he waived this affirmative defense as to count VII and is precluded from raising the issue on appeal. This point is denied.[13]

**Ineffective Assistance of Counsel**

In points VI and VII, Mr. Webber asks this Court to allow him to raise an ineffective assistance of counsel claim in this direct appeal. He argues that counsel was ineffective for failing to raise the necessarily incident exception to accomplice liability and for failing to raise the statute of limitations on all counts. Because we have found that the necessarily incident exception does not apply, it is unnecessary for

---

[13] Mr. Webber filed a motion to correct the judgment the day before the case was argued, asking this Court to modify the judgment "to reflect Count VII as an unclassified felony," or to grant him leave to file a motion for an order *nunc pro tunc,* so the trial court can correct the record. Because the matter will be remanded to the trial court for resentencing, we leave it to that court to address whether the judgment must be modified.

12

us to address an ineffectivenss claim on this basis, whether or not cognizable. Point VII is accordingly denied.

As for whether an ineffectiveness claim is cognizable on direct appeal, Mr. Webber acknowledges that Missouri courts have held that ineffectiveness claims cannot be raised on direct appeal since Rule 29.15 was adopted.

> Rule 29.15(a) states,
>
> A person convicted of a felony after trial claiming that the conviction or sentence imposed violates the constitution and laws of this state or the constitution of the United States, including claims of ineffective assistance of trial and appellate counsel, that the court imposing the sentence was without jurisdiction to do so, or that the sentence imposed was in excess of the maximum sentence authorized by law may seek relief in the sentencing court pursuant to the provisions of this Rule 29.15. This Rule 29.15 provides the exclusive procedure by which such person may seek relief in the sentencing court for the claims enumerated. The procedure to be followed for motions filed pursuant to this Rule 29.15 is governed by the rules of civil procedure insofar as applicable.

Rule 29.15(b) also includes a timing provision that states, "[f]ailure to file a motion within the time provided by this Rule 29.15 shall constitute a complete waiver of any right to proceed under this Rule 29.15 and a complete waiver of any claim that could be raised in a motion filed pursuant to this Rule 29.15."

Missouri courts have held that "a claim of ineffective assistance of counsel, even if compelling, is not cognizable on direct appeal." *State v. Nettles*, 481 S.W.3d 62, 69 (Mo. App. E.D. 2015). "'[A] claim of ineffective assistance of counsel is not cognizable on direct appeal but must be presented pursuant to the procedure set forth in Rules 29.15 or 24.035 which provide for the development of a full and complete record.'" *State v. Brown*, 438 S.W.3d 500, 506 n.5 (Mo. App. S.D. 2014) (quoting *State v. Riley*, 787 S.W.2d 314, 316 (Mo. App. E.D. 1990)). "'These rules provide the

exclusive procedure through which post-conviction relief because of ineffective assistance of counsel may be sought.'" *Id.*

The foundational case for this holding is *State v. Wheat*, 775 S.W.2d 155 (Mo. banc 1989), *overruled on other grounds by Joy v. Morrison*, 254 S.W.3d 885, 888 n.7 (Mo. banc 2008). Mr. Webber asserts that *Wheat* and its progeny should no longer be followed because it was decided under a prior version of Rule 29.15 in which waiver applied due to time constraints and because its plain language reading of Rule 29.15 has been effectively overruled by subsequent decisions. Under the version of Rule 29.15 in effect when *Wheat* was decided, a person seeking relief was required to file a motion to vacate using Criminal Procedure Form 40. *Wheat*, 775 S.W.2d at 157. If an appeal of the judgment sought to be vacated was taken, the motion was required to be filed within thirty days after the filing of the transcript in the appeal. *Id.* The current deadline for filing a post-conviction motion under Rule 29.15 is no later than ninety days after the date the appellate court's mandate issues.

Mr. Webber argues that, when *Wheat* was decided, a defendant was required to file a Form 40 while his or her direct appeal was pending, whereas now a defendant is required to file a Form 40 after the mandate issues from the direct appeal. Accordingly, in his view, under current Rule 29.15, a defendant cannot be considered to have waived claims in a direct appeal that were not raised in a Form 40, because the defendant cannot even pursue a Rule 29.15 action until the direct appeal is complete.

In *Wheat*, the defendant conceded that he failed to file a motion to vacate in the trial court under Rule 29.15, and he recognized "the nominal effect of this failure." *Wheat*, 775 S.W.2d at 157. Mr. Wheat then argued that, under former Rule 27.26,

14

appellate courts had consented in cases of direct appeal to review post-conviction claims of ineffective assistance of trial counsel where a record in the trial court was sufficient to permit appellate review. *Id.* The court declined Mr. Wheat's argument and held that the new rule explicitly provides the "*exclusive procedure*" by which a person may seek relief in the sentencing court for ineffective assistance of counsel, and "failure to file such motion constitutes a complete waiver of the right." *Id.* at 157-58. A change to the Rule 29.15 timing requirement does not change its plain language, which continues to provide the exclusive means by which an ineffective assistance of counsel claim may be raised. And this has been confirmed in cases decided since *Wheat*. *See, e.g., Brown*, 438 S.W.3d at 506 n.5 (holding that ineffective assistance of counsel claim was not cognizable on direct appeal because it was not presented under the post-conviction procedures set forth in Rules 29.15 or 24.035, which allow for the development of a full and complete record); *State v. Celis-Garcia*, 420 S.W.3d 723, 731 (Mo. App. W.D. 2014) (holding that Defendant's claim for ineffective assistance of counsel due to a conflict of interest was not cognizable on direct appeal); *State v. Finster*, 985 S.W.2d 881, 884 (Mo. App. S.D. 1999) (holding that, to the extent Defendant's claim is one of ineffective assistance of counsel, it is not cognizable on direct appeal and Rule 29.15 is the exclusive procedure by which a claim of ineffective assistance of counsel can be advanced).

Mr. Webber asserts that the Missouri Supreme Court effectively overruled *Wheat* in *State ex rel. Laughlin v. Bowersox*, 318 S.W.3d 695, 702 (Mo. banc 2010). In *Laughlin*, the defendant had previously asserted a subject-matter jurisdiction challenge in a Rule 29.15 motion, while his appeal was pending. *Id*. at 697. The State argued

15

that the claim was barred and could not be asserted in a subsequent petition for a writ of habeas corpus under Rule 91.06. *Id*. Our supreme court observed that, while Rule 29.15 had provided the "exclusive procedure" for initially asserting the subject-matter jurisdiction claim before the "sentencing court," and that the Missouri Supreme Court was not the sentencing court, Rule 91.06 provided a separate means to assert the jurisdictional challenge before the Missouri Supreme Court. *Id*. at 701-02. The court also observed that, when Mr. Laughlin chose to challenge the circuit court's jurisdiction, a Rule 29.15 motion was his exclusive means of relief before the sentencing court. *Id*. at 702.

Mr. Webber contends that, because the Missouri Supreme Court said that it was not a sentencing court, then it would follow that the court of appeals is not a sentencing court; thus the "exclusive procedure" language in Rule 29.15 means that the enumerated claims can be raised in other types of motions, but if raised before the sentencing court, they must be raised by post-conviction motion. *Laughlin* does not change the meaning of Rule 29.15 in this way. The court there stated that, insofar as Rule 29.15 had provided a means for asserting the subject-matter jurisdiction claim, a Rule 29.15 motion was Mr. Laughlin's exclusive means of relief in the sentencing court when filed within its applicable time limits. *Laughlin*, 318 S.W.3d at 702. The court concluded that, now that the time for filing a Rule 29.15 motion had passed, Mr. Laughlin could seek a writ of habeas corpus under Rule 91.06 to challenge his illegal confinement under the judgment of a court that purportedly lacked subject-matter jurisdiction. *Id*. This does not, however, alter the meaning of Rule 29.15 as to

16

ineffective assistance of counsel.[14]   Our supreme court acknowledged that post-conviction motions for relief are "designed to provide a 'single unitary, post-conviction remedy, to be used in place of other remedies,' including the writ of habeas corpus." *Id.* at 701 (quoting *State ex rel. Nixon v. Jaynes*, 63 S.W.3d 210, 214 (Mo. banc 2001)). The court noted, however, that subsequent habeas relief is not barred under certain conditions, including an alleged jurisdictional defect.  *Id.*   The ability to assert an ineffectiveness claim on direct appeal does not follow from the allowance of a petition for writ of habeas corpus under Rule 91.06.  No analogous rule gives a defendant a means other than Rule 29.15 to assert an ineffective assistance of counsel claim. Although the Missouri Supreme Court said that it was not a sentencing court, it did not undo Missouri's long-standing procedure for asserting ineffectiveness claims under Rule 29.15.

Mr. Webber also argues that a number of jurisdictions allow for these claims to be raised on direct appeal.  He proposes that this court adopt the procedures and standards from North Carolina, where ineffectiveness claims brought on direct review can be decided on the merits when the cold record reveals that no further investigation is required. *State v. Fair*, 557 S.E.2d 500, 524 (N.C. 2001), *cert. denied*, 535 U.S. 1114 (2002).  In North Carolina, however, "should the reviewing court determine that IAC claims have been prematurely asserted on direct appeal, it shall dismiss those claims

---

[14] During oral argument, Mr. Webber asserted that Missouri courts have allowed two of the three enumerated claims under Rule 29.15 to be raised on direct appeal, i.e., those involving court error, and thus we should similarly consider ineffectiveness claims on direct appeal.  He failed to cite any compelling case law explaining which particular ineffectiveness claims could be addressed on direct appeal, acknowledging that those requiring the development of a factual record post-conviction could not be resolved before an appellate court in the first instance.

without prejudice to the defendant's right to reassert them during a subsequent MAR [motion for appropriate relief] proceeding." *Id.* at 525.

Missouri case law prior to the adoption of Rule 29.15 was similar to that of North Carolina. Missouri would allow ineffective assistance of counsel claims to be presented on appeal from the judgment of conviction if the claims could be disposed of on the record. *See State v. Harvey*, 692 S.W.2d 290 (Mo. banc 1985); *see also State v. Koetting*, 691 S.W.2d 328, 332 (Mo. App. E.D. 1985); *State v. Settle*, 670 S.W.2d 7, 13 (Mo. App. W.D. 1984), *superseded by statute as stated in State v. Wheat*, 775 S.W.2d 155 (Mo. banc 1989). Mr. Wheat had argued that, under Rule 27.26, appellate courts had consented in cases of direct appeal to review claims of ineffective assistance of trial counsel where the trial court record was sufficient to permit appellate review. In this regard, he cited *Settle*. *Wheat*, 775 S.W.2d at 157. The court in *Wheat* discussed former Rule 27.26, which was in effect when *Settle* was decided, noting that Rule 27.26 was markedly different from Rule 29.15, particularly in the lack of time constraints for filing the motion to vacate. *Id.* The court further noted that the appellate court faced a different question when determining whether the claim should be considered on direct appeal because, under Rule 27.26, the court would determine if the record was adequate or whether to require the defendant to return to the trial court with a motion and the opportunity to present further evidence. *Id.* In contrast, those options are replaced under Rule 29.15 by significantly different procedures and new standards for post-conviction proceedings. *Id.*

Under the explicit language of the new rule, the "*exclusive procedure*" by which a person may seek relief in the sentencing court for ineffective assistance of counsel is

18

through Rule 29.15. *Id.* It necessarily follows that claims for relief cognizable under the rule may not be considered when presented on direct appeal. *Id.* at 157-58. Though the previous rule allowed claims of ineffective assistance of counsel to be raised on direct appeal under limited circumstances, the explicit language of Rule 29.15 replaced Rule 27.26. By proposing that this court adopt North Carolina's procedures and standards, Mr. Webber is effectively asking this court to disregard the plain language of Rule 29.15 and adopt a procedure very similar to Rule 27.26, which Rule 29.15 replaced. We are not inclined to do so.

In addition, as noted above, a statute-of-limitations defense is waived if not raised before a plea or finding of guilt and cannot be considered on appeal. Mr. Webber has asserted instead that counsel was ineffective in failing to raise this defense, in effect circumventing the waiver rule and attempting to put the merits of this defense before us on appeal. We will not allow him to do this. Regardless whether the open-ended general statute of limitations for a class A felony applies here or is supplanted by the ten-year statute of limitations for unlawful sexual offenses involving minors, we cannot allow Mr. Webber to circumvent our waiver rules in this direct appeal. Mr. Webber contends that "no possible trial strategy . . . would support not raising the statute of limitations defense," and thus implies that we can rule on this issue on the existing record. While we may be able to discern from the present record that counsel's failure to assert a statute-of-limitations defense fell below an objective standard of reasonableness, we have no way of determining if the defense even applies and thus whether Mr. Webber can show prejudice. Addressing Mr. Webber's substantive argument that changes to the statute of limitations for a sexual offense involving a

19

minor were not made before they expired in his case, the State contends that periods of tolling, i.e., when and if he was absent from the jurisdiction, extended the limitations period. These matters, as well as the victim's birthdate, a fact we are asked to assume, must be established by proof during an evidentiary hearing.

Particularly instructive for our purposes is that "[a]ppellate courts uniformly note that where a claim of ineffective assistance of trial counsel could be more fully developed by evidence outside the trial record, the preferable procedure is to present it initially in a setting that permits an evidentiary hearing." WAYNE R. LAFAVE, ET AL., CRIMINAL PROCEDURE, § 11.7(e), (4th ed. 2015). This can be done in one of three ways: in a motion for new trial, "a remand or other procedure that will stay a pending appeal and return the case to the trial court," or a post-appeal collateral challenge. *Id.* Not only do we reject the contention that an ineffectiveness claim may be asserted on direct appeal in Missouri, we also lack a sufficient record to make a determination on the merits of the statute-of-limitations issue in this case. We will not therefore address it on direct appeal. Point VI is denied.

### Sentencing Range Misdirection

Mr. Webber argues in points VIII, IX, and X that the trial court plainly erred when it erroneously instructed the jury as to sentencing for the class A felony charges of forcible rape, forcible sodomy, and attempted forcible sodomy. As noted above, the range of punishment submitted to the jury, without anything other than a general objection from Mr. Webber, was life imprisonment or a term of years not less than ten years. When Mr. Webber committed these offenses, the range of punishment for a class A felony was "a term of years not less than ten and not to exceed thirty years, or life

20

imprisonment." § 558.011.1(1). The State concedes that the range submitted to the jury was erroneous, but suggests that, as a matter of plain error, no manifest injustice came of the error because the sentences the court imposed on each count—twenty-four years on six counts and ten years on one count—did not exceed the thirty-year upper limit for a term of imprisonment that was not life imprisonment. We disagree.

Under Rule 30.20, we may, in our discretion, review "plain errors affecting substantial rights," if we find "that manifest injustice or miscarriage of justice has resulted therefrom." We first determine whether "the claimed error 'facially establishes substantial grounds for believing that "manifest injustice or miscarriage of justice has resulted[.]"'" *State v. Williams*, 465 S.W.3d 516, 519 (Mo. App. W.D. 2015) (quoting *State v. Brown*, 902 S.W.2d 278, 284 (Mo. banc 1995)). "[P]lain errors are those which are evident, obvious and clear." *Id.* Once we determine that plain error has occurred, "we must continue to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected." *Id.* In *Williams*, we determined that the defendant's claim, i.e., that the sentencing court had a mistaken belief about the range of punishment, facially established substantial grounds for believing that a manifest injustice or miscarriage of justice had resulted. *Id.* Accordingly, we reversed and remanded for resentencing. *Id.* at 520-21. While *Williams* involved the sentencing court's mistaken belief as to the minimum end of the range, we have no reason to believe that a mistake on the maximum end should be treated any differently. "A sentence passed on the basis of a materially false foundation lacks due process of law and entitles the defendant to a reconsideration of the question of punishment in the light of the true facts, regardless of the eventual

21

outcome . . . even if it is likely the court will return the same sentence." *Id.* at 520 (internal citations omitted).

Mr. Webber cites *State v. Shaw*, 844 S.W.2d 20 (Mo. App. W.D. 1992), to support his argument that misinforming the jury as to the maximum sentence requires a remand for resentencing. The State attempts to distinguish *Shaw*, arguing that the jury in that case, unlike here, imposed a sentence far in excess of the maximum allowed by law. *Id.* at 20. We do not believe that this is a meaningful distinction, particularly in light of other case law requiring resentencing on plain-error review even where it is likely that the same sentence may be imposed on remand.

The law is clear that an erroneous jury instruction on sentencing and a sentence passed on the basis of a materially false foundation constitute evident, obvious, and clear error and that such error results in manifest injustice if left uncorrected. Had the jury known that the upper limit of punishment for a term of years for a class A felony was thirty years, it may or may not have sentenced Mr. Webber to twenty-four years on each count. Without any way of knowing what effect this knowledge would have had on the jury, we are constrained to grant points VIII, IX, and X and remand solely for resentencing for each count. *See State v. Chapman*, 167 S.W.3d 759, 763 (Mo. App. E.D. 2005) (ruling that sentencing error arising from bifurcated proceeding may be redressed on remand by means of a new trial as to the sentencing phase only).

## Conclusion

Because the necessarily incident exception to accomplice liability does not apply, Mr. Webber waived a statute-of-limitations defense to the class A felony of attempted forcible sodomy, and Mr. Webber cannot raise an ineffectiveness claim on

22

direct appeal, we affirm his convictions. Because the trial court did not correctly instruct the jury on the range of punishment for his class A felony convictions, we vacate the sentences and remand for re-sentencing. On remand, the trial court may consider Mr. Webber's request to correct the judgment as to Count VII.

/s/ THOMAS H. NEWTON
Thomas H. Newton, Presiding Judge

Martin and Ardini, JJ. concur.