

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | **WD81605** |
| | ) | |
| Respondent, | ) | **OPINION FILED:** |
| v. | ) | |
| | ) | **September 3, 2019** |
| **BRIAN T. LEWIS,** | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
**Honorable Patrick William Campbell, Judge**

**Before Division Two:**
**Lisa White Hardwick, P.J., Thomas H. Newton, and Mark D. Pfeiffer, JJ.**

## Summary

Mr. Brian T. Lewis appeals the judgment and sentence entered by the Jackson County Circuit Court after a jury convicted him of two counts of incest, in violation of section 568.020 RSMo. (Supp. 2006). Mr. Lewis is currently serving a 28 year term of imprisonment. Mr. Lewis contends that the trial court erred in: (1) finding him guilty and sentencing him on both counts of incest because the evidence was insufficient to support the convictions; and (2) misstating Mr. Lewis's sentence in its written judgment. We affirm and remand with directions for the trial court to correct the written judgment as to the sentences.

**Factual and Procedural Background**

At age 3 the victim told her cousin that her father, Mr. Lewis, had sexually abused her. In 2015, when the victim was six years old she told her grandmother that her father peed in her mouth. Unfortunately for the victim, her family did not believe her because she had told lies in the past, but she never made accusations of sexual abuse before. A few months later in November 2015, the victim once again told her cousin and grandmother that Mr. Lewis was sexually abusing her. She alleged that Mr. Lewis would make her choose between 100 whoopings or put his penis in her mouth.[1] She also alleged Mr. Lewis would make her choose between ten licks or put his penis in her mouth or private part. The victim described that her father would "pee" in her mouth. The grandmother immediately took the victim to her mother's home, and the family went to Children's Mercy Hospital. At the hospital, the family met with a social worker, and the victim identified her father as her sexual abuser in the presence of social worker.

Mr. Lewis was charged in the Circuit Court of Jackson County with four counts of first-degree sodomy, two counts of first-degree statutory rape, and two counts of incest. During the trial, evidence showing that Mr. Lewis was the victim's father was submitted in several ways: (1) Mr. Lewis was listed as "father" on the victim's birth certificate,[2] (2) every witness called to testify identified Mr. Lewis as the victim's

---

[1] The victim testified that her father would pee in her mouth. There is some uncertainty as to whether she meant Mr. Lewis ejaculated or urinated in her mouth.

[2] State's Ex. 6.

father,[3] and (3) trial counsel admitted this fact in closing argument.[4] Specifically, the victim and her family identified Mr. Lewis as victim's father as follows:

*Victim*

Q. Who are your mom and your dad?
A. My dad -- my stepdad is named Cortez, aka T.J., and my mom's name is Margaret Lewis.

Q. You said your stepdad, do you have a biological dad or a real dad?
A. Yes, ma'am.

Q. And who is that?
A. Brian Lewis.

*Victim's Cousin*

Q. You said that her dad touches her. Who do you know [victim's] dad to be?
A. Brian Lewis.

*Victim's Grandmother*

Q. Tell me about it.

A. Well, she had came to me, and she told me, "Grandma, remember what I told you awhile back?" And I was like, "What?" She said, "Remember what I told you what my dad did to me?" And I said, "Yeah." She said, "He still doing it, and he put it in me."

Q. Did she specify what "it" is?
A. His private part, uh-huh.

*Victim's mother*

Q. You mentioned that [victim's] father is Brian Lewis. Do you see him in the courtroom today?
A. Yes.

Q. Would you please point him out for me?
A. (Indicating.)

Q. And you're pointing to defense counsel table? And it's the person seated there that's not [defense counsel]?
A. Right.

---

[3] Dr. Lisa Spector, Child Abuse Pediatrician; Ms. Sarah Lee, Social Worker; Ms. Tara Parrish, Investigator for Jackson County Children's Division; and Ms. Randi Spruill, Forensic Interviewer.

[4] Trial counsel also made the judicial admission at the sentencing hearing.

At trial, the victim testified to the oral sexual abuse but recanted all the other forms of sexual abuse. Mr. Lewis was charged with two counts of incest which stated, in relevant part, that he engaged in sexual and deviate sexual intercourse with the victim, "whom the defendant knew to be his descendant by blood."[5] The jury found Mr. Lewis guilty of all eight counts. Mr. Lewis filed a motion for judgment of acquittal or, in the alternative, for a new trial.[6] The trial court denied the motion in the sentencing hearing. In pronouncing sentence, the trial court ordered Count VII to run "concurrent to I-VI." In the written judgment, however, Count VII is ordered to run "Concurrent with Count 8, consecutive to Counts 1-6."

Mr. Lewis filed this appeal challenging the sufficiency of evidence as to counts VII and VIII, and raises a *nunc pro tunc* challenge as to the written judgment.

**Legal Analysis**
**I.**

In the first two points, Mr. Lewis makes identical arguments that the evidence was insufficient to establish beyond a reasonable doubt that he is the victim's biological father as to counts VII and VIII. We address points one and two together.

When reviewing whether sufficient evidence supports a criminal conviction, this Court gives great deference to the trier of fact. *State v. Moore*, 303 S.W.3d 515, 519 (Mo. banc 2010). "Appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty

---

[5] Count VII states, "…the defendant engaged in deviate sexual intercourse by placing his penis in the mouth of [victim], whom the defendant knew to be his descendant by blood. Count VIII states "…the defendant engaged in sexual intercourse with [victim], whom the defendant knew to be his descendant by blood."

[6] While Mr. Lewis did not raise this sufficiency claim in the post-trial motion, he is not required to do so under Rule 29.11(d), to preserve it for appellate review. *State v. Webber*, 504 S.W. 3d 221, 226 n. 6 (Mo. App. W.D. 2016).

4

beyond a reasonable doubt," *State v. Oliver*, 293 S.W.3d 437, 444 (Mo. banc 2009) (quoting *State v. Chaney*, 967 S.W.2d 47, 52 (Mo. banc 1998)).

> This is not an assessment of whether the Court believes that the evidence at trial established guilt beyond a reasonable doubt, but rather a question of whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt. *State v. Ray*, 407 S.W.3d 162, 166 (Mo. App. E.D. 2013).

Mr. Lewis was charged with two counts of incest in violation of section 568.020, RSMo Cum. Supp. 2006, which provides:

> 1. A person commits the offense of incest if he marries or purports to marry or engages in sexual intercourse or deviate sexual intercourse with a person he or she knows to be, without regard to legitimacy, his: (1) ancestor or descendant by blood or adoption…

On appeal, Mr. Lewis contends that the evidence was insufficient to prove that he is the victim's biological father because the birth certificate, the trial references to him as the victim's father, and trial counsel's judicial admissions do not prove the scientific fact that he is the victim's biological father. Mr. Lewis asks the Court to apply the *Dolan* test as a rubric for analyzing sufficiency challenges of evidence to prove a scientific fact absent scientific testing. *United States v. Dolan*, 544 F.2d 1219, 1221 (4th Cir. 1976).[7] *Dolan* upheld a criminal conviction involving controlled substances based on

---

[7] The test to which Mr. Lewis refers is set forth as follows:

> " … [c]ircumstantial proof may include evidence of the physical appearance of the substance involved in the transaction, evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, evidence that the substance was used in the same manner as the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness, and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence. *United States v. Dolan,* 544 F.2d 1219, 1221 (4th Cir. 1976).

circumstantial evidence such as "… the substance was called by the name of the illegal narcotic by the defendant or others in his presence." *Id*. The evidence presented to support the element of paternity as to the incest charges included testimony from the victim, the mother of the victim, the grandmother of the victim, the cousin of the victim, the social worker who interviewed the victim, and the forensic interviewer. The victim's birth certificate identifying Mr. Lewis as the victim's father was also offered as evidence. Even using the *Dolan* test, any rational fact-finder could have found beyond a reasonable doubt that Mr. Lewis is the victim's biological father. The evidence showed that (1) Mr. Lewis recognized and held out the victim as his daughter; (2) he called her such; (3) she called him "dad"; (4) those, who were intimate with the family, always regarded her as his daughter; and (5) that the victim's mother, who was a defense witness, swore that he was the father of her children in front of him. "[T]he relationship and pedigree of the parties may be proved by reputation." *State v. Bullinger*, 54 Mo. 142, 143–44 (1873) (internal citations omitted). *See also State v. Eding*, 141 Mo. 281, 42 S.W. 935 (1897) ("It was the province of the jury to believe or reject the testimony of the state's witnesses. If they believed it, the crime was established.").

Further, trial counsel's voluntary judicial admissions affirmed that Mr. Lewis is the victim's father. "A judicial admission is an act done in the course of judicial proceedings that concedes for the purpose of litigation that a certain proposition is true." *The Empire Dist. Elec. Co. v. Coverdell*, 344 S.W.3d 842, 852 (Mo. App. S.D. 2011). *See also Kelly v. State*, 623 S.W. 2d 65, 68 (Mo. App. W.D. 1981). Judicial admissions are generally conclusive against the party making them. *Id*. In our

6

independent review of the record, we find that trial counsel conceded that Mr. Lewis is the victim's father both in closing and during the hearing on motion for new trial:[8]

> She said that with force. She was not being coerced. She was not here looking scared. She essentially said it to the jury panel as a fact. *She said it with her father right here. She wasn't shying away from her father.* (emphasis added).

> With regard to those three, the interesting thing is that if she were trying to cover for him, *if she were trying to clear her father*, she would have essentially said that none of the things happened and all of them were lies. With regard to this particular thing, she for one reason or another maintains that Counts I, III, and VII did occur. (emphasis added).

Point I and II are denied.

## II.

In the third point, Mr. Lewis contends that the trial court erred in entering its written sentence and judgment, which did not conform to the oral pronouncement of the sentence or the jury's verdict. The written sentence and judgment stated, "IT IS ORDERED AND ADJUDGED that Counts 1-6 shall run concurrent with Counts 1-6 and consecutive with Counts 7-8. Counts 7-8 shall run concurrent with Counts 7-8 and consecutive with Counts 1-6." However, the oral pronouncement stated:

> "So the sentence on Counts I through VI will be 25 years, the sentence on Count VII will be three years concurrent with I through VI, and the sentence on Count VIII will be three years, and that sentence will be consecutive to 1 through VII."

Both parties agree that the written sentence and judgment are incorrect and do not match the jury verdict or the oral pronouncement at sentencing. The written sentence and judgment of the trial court should reflect the oral pronouncement of

---

[8] Moreover, the issue of paternity was never controverted in any trial court proceeding.

sentence. *State v. Johnson*, 524 S.W.3d 137, 141(Mo. App. W.D. 2017), citing *State v. LaJoy*, 216 S.W.3d 256 (Mo. App. E.D. 2007). When a clerical error or omission has occurred, the trial court has the power to correct the inaccuracy with a *nunc pro tunc* order. *State v. Woods*, 357 S.W.3d 249, 256 (Mo. App. W.D. 2012). Therefore, a remand is necessary in this case for correction of the written judgment which would be the same as the oral sentencing pronouncement. Point III is granted.

## Conclusion

We, therefore, affirm the circuit court's judgment convicting Mr. Lewis of two counts of incest but remand to the circuit court for the sole purpose of entering a *nunc pro tunc* judgment to correct the written judgment to reflect that Count VII is to run concurrent with Counts I-VI.

/s/ *Thomas H. Newton*
Thomas H. Newton, Judge

Lisa White Hardwick, P.J., and Mark D. Pfeiffer, J. concur.